MULDROW vs. AGNEW.

1. The rules relative to endorsements in blank do not apply to notes which are not negotiable. A blank endorsement of such notes only gives the person to whom the payee actually transferred the note the right to fill up such endorsement to himself. It does not authorize a subsequent endorsee to fill up the endorsement in his own name, nor does it authorize the immediate endorser to fill the blank with the name of a stranger.

2. The measure of damages to be recovered against an endorsee, is the consideration received by him, with interest.

ERROR to Hannibal Court of Common Pleas.

GLOVER & CAMPBELL, WELLS & REDD, *for Plaintiff.*

1. There was no evidence whatever of the assignment of the note to Agnew. The only statement of Mr. Dryden, the witness, upon the point is, *"it came to his hands for suit."* Who gave it him—where he got it—what was paid for it, or by what authority he filled it up to Agnew, does not appear. In Wood & Oliver vs. McDaniel & Ousley, 7 Mo. R., 543, is a similar case.— There an assignment was attempted to be made without authority, and it was held void by this court.

2. But here was no assignment *in blank,* as contended for by the defendant in error. The endorsement on the note, as made by Muldrow, had every appearance of being intended for a perfect instrument, and must be regarded as having been so understood by the parties to it. That no name was inserted as assignee, was unquestionably by mistake or accident. A blank endorsement has always been made by the mere name of the party endorser. We have looked in vain for a precedent to the contrary. No party has a right to assume the power of correcting errors, even if they exist. This is the province of the courts. As the endorsement stood, there was no assignment at all, and the defendant was not legally bound as assignor. Hardin's R., 53. If fraud, accident or mistake had intervened, the plaintiff had no right to add to or take from the instrument to make it comport with his views of what it should have been. The note not being negotiable by common law, was not assignable; (4 D. & E. 340; 1 East. 103;) negotiable instruments being assignable by the law merchant, that law, from time immemorial, has allowed blank endorsements, and permitted the holder to fill them up or strike them out; but this note derives all its quality and assignability from the statute, and the doctrine of blank endorsements does not apply to it. Unlike negotiable paper, each assignee can look for recourse only to his immediate assignor, and hence the doctrine of endorsing in blank and filling up or striking out is impracticable without altering the law. Hardin, 218; 3 Marsh., 163; 3 J. J. Mar., 548; 2 Bibb, 425.

3. It seems to us, that if any contract at all is proved between Agnew and Muldrow in the case, it is one which is not declared on the instrument on which the 6th count is founded, and which is in these words, "I bind myself to be at all the trouble of collecting Rev. Wm. McJimsey's note of $1000, due June 27, 1838, if it should not be promptly met by said McJimsey. May 27, 1837. Will. Muldrow,"—manifestly relates to the note in question. If the note ever came to Agnew's hands, so did this paper; and if it is not a written contract, is a good verbal one, if it was in fact the agreement of the parties. It shows that Muldrow, for his own reasons, reserved to himself the privilege and right of collecting the note if not met. He may have known how to do it; no doubt had reference to McJimsey's land in this State. But no opportunity has been of-

fered him to comply with this contract. He has never had the note, nor has it been tendered to him. He has not now the privilege of attaching McJimsey's land, and the plaintiff refuses to do it. The 6th count, to be grounded on this evidence, should have averred a return of the note to Muldrow.

4. Conceding a valid assignment of the note to Agnew, the assignment does not import a consideration, and the proof was deficient on this point. In this action, the plaintiff sues to get back the consideration. 1 Bibb, 545; 1 Mon., 103. Now, as the consideration may be money or property, or work and labor, and as the consideration in all pleadings must be shown as it really is, (1 Chitty's Pl.) it must be stated here with the same particularity—and the plaintiff has done so, but to what avail is it stated, if the assignment shall import in all the cases the particular species of consideration which the pleader has named. The appellees alledge a money consideration in one count and prove it by the assignment. In the next count, they alledge a property consideration for the same assignment, and it is proved in the same way. Thus, pleading and evidence are confounded and made to perform their several offices for each other.

5. Non-residence merely, is not sufficient under the statute to give the assignee recourse against the assignor, but it must be such as that a *"suit would be unavailing, or could not be instituted."* R. C. 1835, p. 105. The residence of the defendant is not necessary to the institution of a suit. If the assignor omit any opportunity of collecting the note of the maker by a suit at law, (he is not bound to go into chancery) it is laches that discharges the assignor. 4 Scammon, 385. Here was a certain means of making the debt by an easy process. If mere *insolvency* any where, or mere non-residence, was deemed sufficient, though the maker have property subject to attachment within the State, why are these words used ?—"so that a suit would be unavailing or could not be instituted." As we construe the law, these words have *meaning*—none as construed by the adversary. No attempt was made to show insolvency of the maker in Missouri. 1 Bibb, 545.

6. There was no finding of the issues in the cause, and the judgment was and is a legal nullity. 5 Mo. R., 53; 3 Mo. R., 390; 6 Mo. R., 254; Fresh vs. Holmes, 9 Mo. R.

ANDERSON & DRYDEN, *for Defendant, insist:*

1. That the assignment is *prima facie* evidence of a consideration from assignee to assignor equal to the nominal amount of the note assigned, and is sufficient evidence of the consideration until rebutted. 1 Tuck. Com., 349-50; 2 Washington, 219; ib. 230; ib. 232; 5 Randolph, 377; 2 Bibb, 424; 1 Marshall, 535; 3 Marshall, 305; 5 Cranch, 332.

2. Waiving the question whether Muldrow has proved that the contract for the assignment of the note was not between him and Agnew, but between him and some one else, we insist that Agnew had the right to fill up the blank endorsement to himself and thereby create himself the immediate assignee of Muldrow, and entitle himself to all the rights and remedies on such note against maker and assignor as he would have if the assignment had been in full. It cannot be questioned that any *bona fide* holder of a bond or note, negotiable or not, endorsed in blank, has the right to fill the endorsement up in his own name. Wiggin vs. Rector, 1 Mo. R., 338; Menard vs. Wilkerson, 3 Mo. R., 67.

3. We insist that although it may appear that McJimsey, the maker of the assigned note, had property in Missouri at the time the note became due, yet, if McJimsey was then non-resident, and so continued up to the commencement of this suit, Agnew was not bound first to pursue said property in order to charge Muldrow. The statute declares that the assignee may maintain his action against the assignor if the obligor or maker is insolvent or is not a resident of or residing within this State. If the obligor or maker is *insolvent*, the liability of the assignor is fixed, whether the maker is in or out of the State; or, if he is non-resident, however much property he may have here or elsewhere, this one fact, independent of all others, is made to determine the liability of the assignor.

McBRIDE, J., *delivered the opinion of the Court.*

John H. Agnew brought his action of assumpsit against William Muldrow, in the Marion Circuit Court; the venue was afterwards changed to the Hannibal Common Pleas. The action was founded upon an assignment by Muldrow to Agnew, of the following note:

$1000. MARION CITY, June 27, 1836.

Twenty-four months after date, I promise to pay to the order of Will· Muldrow, in New York, one thousand dollars, without defalcation, for value received. WM. McJIMSEY.

With the following assignment thereon:

"I assign this note for value received, May 25, 1837, to John H. Agnew. WILL. MULDROW."

The original declaration contained ten counts, and was afterwards amended by adding five additional ' counts; all the counts charge Muldrow, as assignee, under the statute of this State, first, because McJimsey was a non-resident at the time the note fell due; and secondly, because the said McJimsey was insolvent, and a suit against him would have proved unavailing.

The defendant pleaded fourteen pleas. A trial was had before the court, without the intervention of a jury, and a judgment given for the plaintiff, when the defendant moved for a new trial and in arrest of judgment, assigning the usual reasons, which motions were overruled, and he excepted and now brings the case here by writ of error.

We learn from the testimony in the cause, as preserved in the bill of exceptions, that at the date of the execution of the notes, William McJimsey and William Muldrow both resided in Marion county, in this State, and that the note was executed at Marion City, in said county; that the next year after the execution of said note, McJimsey removed from this State to New York, where he has continued to reside.

On the 25th May, 1837, Muldrow made the assignment in question, and also made a memorandum to this effect: "I bind myself to be at all the trouble of collecting Rev. Wm. McJimsey's note of $1000, due 27th June, 1838, if it should not be promptly met by said McJimsey."

On the 11th June, 1839, suit was instituted on the note against McJimsey, in the name of John Taylor, of Newark, N. J., into whose hands the note had come; judgment obtained in New York, execution thereon, and return of *nulla bona.* William McJimsey never was worth any thing to the knowledge of his friends in New York.

In the year 1843, the note was placed in the hands of Mr. Dryden, an attorney at law of Palmyra, Mo., for.suit, when he, without the knowledge or consent of Muldrow, added to the assignment made by Muldrow on the back of the note, the words *"to John H. Agnew."* There is no evidence that Agnew ever saw the note, or gave any direction concerning it.

The defendant then gave in evidence a tabular extract taken from the books of the register of lands in Palmyra, showing that in July, 1836, McJimsey entered 400 acres of land in Clark county, and that in the years 1837–8–9, lands in that section of country were worth from six to ten dollars per acre.

Thereupon the plaintiff asked the court to declare, and the court did declare the law to be:

1. That if. it appear from the evidence that the plaintiff is the holder of the note now sued upon, by an assignment in blank, from the defendant to the plaintiff, (the defendant not denying by plea supported by affidavit, his signature to the assignment,) this is *prima facie* evidence that the plaintiff is the owner of the said note, and the burden of proving that the plaintiff is not the bona fide assignee from the defendants, rests upon the defendant.

2. That if it appear from the evidence that the defendant endorsed the note in blank, this was an authority from the defendant to any person to whose hands the note might fairly come, to fill up the assignment to himself; and if it appear that the plaintiff filled up the blank assignment in this case to himself, the presumption is it was so filled up fairly, and the burden of showing unfairness rests upon the defendants.

3. That if it appear that the defendant assigned the note in question in blank, and sent it abroad in that shape, it was not necessary for the plaintiff in order to fill the blank and make himself assignee·of defendant, to ask the defendant for his consent and authority so to fill the blank; the endorsement of the defendant in blank is a sufficient consent and authority of defendant to plaintiff for that purpose.

4. The assignment of the note is *prima facie* evidence of the payment of a consideration from the plaintiff to the defendant for said assignment, co-extensive with the amount of the note assigned; and the burden of showing that the defendant gave a sum for the assignment smaller than the sum specified in the note, rests upon the defendant.

5. That if it appear that McJimsey, the maker of the note, was nonresident of this State at the time said note became due, and from that time until the commencement of this suit continued non-resident,

this excuses said plaintiff for not pursuing said McJimsey by suit for the recovery of money due on said note.

6. That if it apear from the evidence that at the time this note became due, McJimscy, the maker, was non-resident of the State, and from that time until the commencement of this suit had not returned to this State, this excuses the plaintiff from pursuing the said McJimsey by suit for the recovery of the money due on said note, whether McJimsey had property in Missouri or not.

Defendant excepted, and prayed the court to decide the law to be as follows:

1. That unless it appear from the evidence that Muldrow assigned the note offered in evidence, to Agnew, that he cannot recover of Muldrow.

2. That if it appear from the evidence that Muldrow assigned the note in blank, in 1837, and delivered it to Taylor, or some other person, that when the note fell due, and for two or three years after, the said note was in the hands of Taylor, who sued on the same in his own name; and that afterwards, in the year 1843, it came into the hands of Agnew, and the blank assignment was filled up [by the insertion of his name, without the authority, privity or consent of Muldrow. Such a state of facts does not constitute Muldrow the assignor of Agnew so as to make him liable as such.

3. That if. in 1837, Muldrow endorsed on the back of the note, the words, "I assign this note for value received, May 25, 1837. Will. Muldrow." And that afterwards, in 1843, the words "to John. H. Agnew," were inserted, without the authority, knowledge or consent of Muldrow, that such endorsement and insertion of said name constitutes no assignment from Muldrow to Agnew.

4. That in the counts which aver goods and chattels as the consideration of the assignment, the proof should show a consideration of goods and chattels received of Agnew by Muldrow; and in the counts which aver a consideration in money, the proof should show a money consideration from Agnew to Muldrow; otherwise there should be a verdict for defendant on those counts respectively.

5. The plaintiff cannot recover of the defendant on the ground of the insolvency of McJimsey, if it appear from the evidence that when the note fell due McJimsey owned 400 acres of land in Missouri worth $1,000 or $1,500.

6. He cannot recover on account of McJimsey's non-residence, if it appear that he owned lands in Missouri sufficient to pay the debt, which might have been attached.

7. The instrument in writing offered in support of the last count is no evidence of assignment from Muldrow to Agnew. It is not legal evidence to support any count in the declaration.

The first and last were given, but the others refused, to which refusal the defendant excepted.

We shall pass by the first instruction given for the plaintiff as unobjectionable, as it presents a mere question of fact for the finding of the jury.

The second and third instructions also given at the instance of the plaintiff may be considered together, and in connection with a counter proposition embraced in the second instruction asked by the defendant, inasmuch as the latter embodies most, if not all, the material facts in the case.

The note upon which the assignment in question was made, is declared upon by the plaintiff as not negotiable, and has been so treated by the defendant. We shall therefore regard the assignment as made under the statute, which gives to an assignee the right of action against the assignor upon failure to obtain payment from the obligor, after the exercise of due diligence, or if the obligor is insolvent, or is not a resident of, or residing within the State, so that a suit would be unavailing or could not be instituted. R. C., 1845, sec. 6, p. 191.

In the absence of any statutory provision on the subject, in the State of Virginia and Kentucky, it was held by the Supreme Court of the United States, (1 Cranch, 94) and the Appellate Court of Kentucky, (Hardin, 223) that the assignee was entitled, upon common law principles, to his action upon the implied promise, created by the assignment. This principle has also been recognized by this court. 8 Mo. R., 560.

It is equally well settled by the above authorities, as well as others that might be cited, that this liability of the assignor is confined to his immediate assignee; that the implied promise, raised by the law, inures only to the benefit of the assignee, between whom and the assignor, there is a privity of contract. In Hardin's Rep., 223, the court say "the law of merchants cannot apply between the assignor and a remote assignee of a note or bond assigned under our act of assembly; for if it could apply, it would place the implied contract growing out of the assignment of a note or bond upon a more elevated footing than the express contract, the note itself; which would involve the absurdity of making the incident greater and more worthy than the principal."

The difference between the Kentucky and Virginia statutes, and our statute, is, that the former do not give the assignee the right of action

against the assignor, but leave him to his common law remedy, whereas, our statute gives the action upon certain conditions.

In an action by an assignee against his assignor, the measure of damages is the consideration paid for the assignment. How is this rule to be applied between an assignee and a remote assignor? The remote assignor may have received a greater or less consideration from his immediate assignee, than that paid by the plaintiff.

The error in this case appears to have been superinduced by the twofold and inconsistent aspect in which the court seem to have regarded the subject. The note, although treated at first as not negotiable, still an effort is made to apply some of the principles governing negotiable paper to it. Why not apply all of those principles and require the plaintiff to show presentation, non-payment, protest and notice before the liability of the defendant attaches?

The doctrine of endorsements in blank, and the right of any *bona fide* holder to fill up the same, is not applicable to a note not negotiable, for it would be doing violence to the principles of the common law, as well as the rights of the assignor, to permit a stranger to the assignor, who happens to obtain possession of the note, to substitute himself as the assignee, and hold the assignor responsible to one with whom he had not contracted.

To sustain the decision of the Court of Common Pleas on this subject, we are referred to a case reported in the 1st Mo. Rep., 338, and 3 ib., 67. These cases do not, however, meet the question at issue. They are distinguishable from the present case, being actions by the assignee against the makers of the notes to recover the debt; the assignments were in blank, but declared upon as assignments, when this court held that the writing of the payees, named on the back of the note, was not an assignment, but only authority to the holder, who had received it directly from the payee, to make an assignment by filling up the blank.

Therefore, the court erred in giving the second and third instructions asked for by the plaintiff, and in refusing the second asked for by the defendant. The other instructions of the plaintiff are well enough, and lay down the law correctly upon the subjects embraced in them.

Another, and a very grave question might arise in this case, but which is not presented by the record, and which we do not now undertake to decide. This note is made payable in New York, and by the laws of that State, it is a negotiable instrument, whatever may have been heretofore decided by this Court in reference to similar instruments.— Now, is this contract to be construed by the laws of New York, where

it was made payable, and with reference to which it was made, or, by the laws of this State, where the remedy is sought?

The judgment of the court below is, for the foregoing reasons, reversed, and the cause remanded.