## THOS. B. ODELL & SAM'L. E. FRINK *vs.* GEO. G. PRESBURY Jr., STEPHEN T. CASKILL & JAS. M. FRANCISCUS.

A blank endorsement of a promisory note by the payee, though done solely for the purpose of collection, is *prima facie* evidence of an assignment for value, aud may be so treated by any subsequent assignee.

APPEAL FROM ST. LOUIS COURT OF COMMON PLEAS.

### STATEMENT OF THE CASE.

Odell and Frink, merchants of New York, having sold goods to Isaac Griffin, a merchant of Belleville, Illinois, took his note (not negotiable) for $382 53-100ths. payable to their order, at the Bank of the State of Missouri at St. Louis, seven months after date, and dated 20th August, 1847. It fell due 20th March, 1848.

On the 26th of February, 1848, Odell and Frink endorsed and delivered the note of Griffin to Joseph S. Lake & Co., brokers and private bankers in the city of New York, for the sole purpose of collection, and the plaintiffs, Odell and Frink, were in no case indebted to Lake & Co. Lake & Co., endorsed the note, and on the 26th of February, 1848, enclosed it to Geo. E. H. Gray & Co., of which firm the defendants are the company, "for collection."

Geo. E. H. Gray & Co., of St. Louis, were brokers and private bankers, and there was an agreement between Lake & Co., and Gray & Co., that either party could draw on the other,

with of without funds in their hands, and the course of dealing was according to that agreement. *Drafts* remitted, were passed to the credit of the party remitting. Lake & Co., remitted no funds to Gray & Co., to draw against. Gray & Co., remitted to Lake & Co., from 25 to 30,000 dollars per month, to draw against at New York. The amount of business done by Lake & Co., for Gray & Co., largely exceeded that done by Gray & Co., for Lake & Co., and it was *only occasionally* that Lake & Co., had any thing to do at St. Louis. The business of Lake & Co., with Gray & Co. at St. Louis, was the collection of drafts and notes which were generally received from merchants in New York for that purpose, and then remitted to St. Louis. *This note*—the Griffin note—was remitted in the ordinary way in which other *notes* were remitted to Gray & Co., by Lake & Co.

On the 25th of March, 1848, three days before the failure of Lake & Co., Gray & Co., addressed Lake & Co., thus: "We have to your credit, Isaac Griffin's note paid $382 53-100ths. Geo. E. H. Gray & Co." On the news of Lake & Co's. failure, Gray & Co., sent a member of their firm to New York, and he was notified prior to any settlement between Gray & Co., and Lake & Co., that the Griffin note belonged to Odell and Frink, the plaintiffs. On the 20th of April, 1848, Odell & Frink demanded the proceeds of said note, collected by Gray & Co., of them, at their banking house, and they refused to pay over, claiming to hold the proceeds of the plaintiffs note by virtue of a lien for the general balance of their accounts against Lake & Co.

The plaintiffs sued Gray & Co., on the common counts, and a special count. Defendants plead the statutory general issue.

On the trial, the foregoing facts appeared in evidence, and the defendants admitted they were partners in the firm of Geo. E. H. Gray & Co., and that the note refered to, was the same identical note paid by Isaac Griffin to Gray & Co. The defendants then asked the following instructions.

"If the jury find from the evidence that the note of Isaac Griffin was endorsed by the payees to Lake & Co., and by them to the defendants, and that the defendants received the money, and applied the same to the credit of Lake & Co., on any account before their failure, in the usual course of business, and that Lake & Co., were indebted to the defendants at the time of such application, and the same had not been otherwise discharged, and that the defendants had no notice of the interest of the plaintiffs other than what the paper and its endorsements imparted prior to such application of the proceeds of said note and failure of Lake & Co., they will find for the defendants."

2nd. The endorsements of Odell and Frink transfered the legal title in the note to J. S. Lake & Co., and if the plaintiffs seek to recover of the defendants on the ground, that defendants had notice when they received the money and credited it to Lake & Co., on the note, that it was the property of the plaintiffs, and not the property of Lake & Co., it is for the plaintiffs to prove such notice before they can recover in this suit."

To the giving of the above instructions, the plaintiffs at the time excepted and objected, but the court gave said instructions to the jury, to the giving of which the plaintiffs excepted and objected.

The plaintiffs then moved the court to give the following instructions to the jury:

1st. "If the jury believe from the evidence that Geo. E. H. Gray & Co., at the time of the receipt of the Griffin note had notice either express or implied that Joseph S. Lake & Co., had no interest in said note, and that it had been transmitted to them *for collection*, merely as agents then Gray & Co., were not entitled to retain, against the plaintiffs the proceeds of said note for the general balance of their account against Lake & Co.

2nd. "And if Gray & Co., had not notice that Lake & Co., were merely agents, but regarded and treated them as owners of the said note. Yet Gray & Co., are not entitled to retain the proceeds of said note against the plaintiffs, who were the real owners, unless credit was given to Lake & Co., or balances were suffered to remain in their hands, to be met by this note

or by such negotiable paper, transmitted or expected to be transmitted in the usual course of the dealings between the brokers houses of Gray & Co., and Lake & Co.

3rd. "In order to entitle the defendants to retain the proceeds of said note by virtue of their general lien as bankers, the jury must find from the evidence that the defendants made advances or gave new credit to the house of Lake & Co., on account of this note, or on account of the expectation of the transmission of such notes, without notice that this note was sent *for collection* merely by Lake & Co., as agents for the owners."

4th. "If the jury believe from the evidence that the collection of notes by the house of Gray & Co., for the house of Lake & Co., was only on occasional transaction; that the principal and legitimate business between said banking houses, was in buying and selling exchange on each other, pursuant to an agreement or arrangement made before the Griffin note was sent to the defendants for collection; and that defendants did not make any advance on said note to Lake & Co., or give Lake & Co., credit for any advances then made or to be made upon the deposit of said note with them, or upon the expectation of the transmission of such paper to the defendants by Lake & Co., in the usual course of their mutual dealings of a like nature, and that the plaintiffs were its real owners of said note, and endorsed it to Lake & Co., for collection only, and that the defendants have received the proceeds of said note from Griffin the maker, and have not, since receiving said proceeds, paid them over to Lake & Co., previous to the notice, if the plaintiffs interest in said note, then the jury will find for the plaintiffs and assess the damages at the amount of the note, with interest from the time payment thereof, was demanded of defendants, deducting first from the amount of the note the usual commission allowed to banking houses for collecting such paper."

5th. "The note in question not being a negotiable note by the laws of Missouri, the defendants in this action could not acquire a lien on the proceeds thereof, by virtue of the assignment of Lake & Co., made for the purpose of collection." The court overruled said instructions asked for by the plaintiffs, and refused to give them to the jury, to which overruling and refusal of the court, the plaintiffs then and there excepted and objected.

Whereupon the jury retired and found a verdict for the defendants.

The plaintiffs then moved the court for a new trial, and filed a motion to that effect, for and on account of the following assigned reasons:

"1st. That the court grossly erred in overruling the instructions asked by the plaintiffs, refusing to give them to the jury.

2nd. That the court erred in giving the instructions asked by the defendants to the jury.

3rd. That the jury found a verdict against law and evidence."

The court overruled said motion, to which the plaintiffs excepted, and the cause is here by appeal.

## Hill for appellants.

1st. Lake & Co. as brokers and bankers in New-York in receiving notes for collection at a distance, necessarily undertook to employ *sub-agents* to make such collections, and this was the whole extent of their authority; and this the defendants had notice by the usages of banks, and the course of trade. So they became only *sub-agents* of Lake & Co., and had no lien on this note, except by substitution, to the lien, of Lake & Co., for the fees of collection. Lawrence vs. Stonington Bank, 6 Conn. 521; Story's agency, sec. 388, 389 and sec. 14; Frazier vs. Erie Bank, 8 Watts and Ser., 32, 9 East. 12; 7 Bing. 284; 6 Mass. 430; 19 Ves. 299; 1 Rose, 154, 243, 232; 1 Bos. & Pul., 648, 546, Amer. Lead. Cas. vol. 1, 544; 1 Peters 5 C. Rep. 29 30; 3 Howard 763, 6 Hoe & John. 146; 4 Ranle. 385; 23 Pick. 330; 12 Conn. 304; 3 Hill N. Y. 560.

2nd. This note was payable at the Bank of Missouri, St. Louis, and the employment of a sub-agent for collection was apparent from the face of the instrument, so that the defendants

had no more right to suppose that Lake & Co. were the owners of this note from the endorsement of plaintiffs, than they would have had to suppose they themselves became the owners from the endorsement of Lake & Co., and the transmission thereof to them for collection.

3rd. The presumption of notice is clearly brought to defendants in this case, it was a county note not negotiable, payable at a distance, sent to defendants for collection, not put into circulation or discounted; and has not been treated as the note of Lake & Co. by defendants.

4th. Without the notice no lien can exist unless there is a general balance of accounts between the *customer* and the banker, in respect to other dealings of a like nature. The banker to enforce his lien against the *owner* of the note, must have given credit, or have made advances to the debtor, on account of this note, or in the expectation of the transmission of such paper. Lawrence vs. Stonington Bank. 6 Conn. 521. Bank of Metropolis vs. New England Bank; 6 How. 222; 3 Howard 763.

5th. No such credit was given or advance made on this note, or on the expectation of the transmission of such paper, all the credit was given, under argreement to draw without funds.

6th. The note being payable in Missouri, must be judged by the laws of this State, and it was not negotiable and passed subject to equities. The lien of bankers as against the *true owners*, does not attach on negotiable paper, the words in the books are liens attach upon "negotiable securities, bills and notes."

7th. The court erred in excluding from the jury the question of implied notice of the note being sent for collection, and the question whether defendants had given Lake & Co. credit, or made advances to them, on this note, or in the expectation of the transmission of such paper.

## LORD for defendants.

1st. The instructions asked for by defendants, and given by the court, contain a true exposition of the law of this case.

The note was endorsed by plaintiffs, over to Lake & Co., or what was equivalent to it, endorsed in blank and by Lake & Co. to the plaintiffs; they became the bona fide holders of it, and had a right to credit the amount paid upon it, to Lake & Co., and to hold the same in payment of the debt due them by Lake & Co., so far as it would go. Lake vs. Clark, 11 Mo. 97; 16 Peters; 1 Story on promisory notes, sec. 195, page 215, note 1, and cases there cited; 1 Burr 452; Chitt. on bills 112. See Halcombe and Gholson's Ed. Smith's mercantile law, page 258. Note by American edition; 3 Dowling 750.

2nd. The amount of the note having been received by Gray & Co., and credited to Lake & Co , before any notice of the failure of Lake & Co., was payment by Gray & Co., to Lake & Co. of the amount. See case of Carlisle vs. Wirhart 11 Ohio 172, and the able review of authorities cited by Peck, council; 11 Connecticut 388.

This question would never have been raised, had Gray & Co. remitted the amount of the Griffin note to Lake & Co. when received, this was certainly all they were bound to do ; now the crediting of the amount paid to Lake & Co. on their indebtedness, was the same thing as payment. Lake vs. Clark 11 Mo. 97; 16 Peters 15, 22, and authorities there cited and commented on.

See opinion of Williams Jus.; Cranch vs. White 6 Carrington and Payne, 767; 25 Eng. C. law, 641 ; 5 New Hampshire 159; a part indebtedness is a good consideration.

3d. Bankers have a general lien upon all the securities of their customers coming to their hands. 1 Howard 234; 6 Howard same case; Bennett vs. Brand 46 English Com. law 630; same case 54; English Com. law 436.

The case of the New England Bank against the Bank of the Metropolis, reported in 1 Howard, was not as strong a case as this, for in that case it appears, that the Bank of the Metropolis was notified, before the paper fell due, that the paper that had been remitted by the

commonwealth Bank was owned by the New England Bank. Banks do not buy negotiable paper of one another. The case clearly recognises the doctrine that bankers have a lien on all papers coming into their hands. See also 1 Esp. p. 66, 5 term 488, 491, 493.

4th. The instructions asked for by the plaintiffs were properly refused by the court.

The first instruction was properly refused, because it is not law applicable to the facts of this case, because there was no evidence to support it.

The second instruction is not law, proceeding as it does, upon the hypothesis that a part indebtedness is not a good consideration. The case of Swift vs. Lyon, 16 Peter, as well as the case of Lake & Clark 11 Mo., to show that a part indebtedness is as good a consideration as a present advance.

The third instruction is not law, for the same reason as last above mentioned; it admits the lien of Bankers, but denies that there is any lien, for part indebtedness, but only for present advances.

The fourth instruction is not law, or if, as an abstact proposition, it be law, it does not apply to this case.

1st. It seems only to reiterate the doctrine attempted to be drawn from the 2nd and third instructions; that a part indebtedness is not a good consideration.

2nd. The amount was paid by Gray & Co. to Lake & Co., before this suit was brought. The credit given to Lake & Co. was payment just as much as if the amount had been paid then in specie, and

3rd. The defendants never had any notice of the plaintiff's interest in the note.

It came to them regularly endorsed to Lake & Co., who claimed to be the owners by endorsing it to Gray & Co. The paper was put in circulation by Odell and Frink, they clothing of Lake & Co., with all the evidence of ownership, and it would be perpetrating a gross fraud to say that because Lake & Co. have failed, they may recover from the endorsee of Lake & Co. who received the money, in pursuance of such endorsement, and paid over to Lake & Co., or what is the same thing, credited it on an indebtedness due them from Lake & Co.

The fifth instruction *assumes* that the note was not negotiable. To this I say,

1st. The note is not a negotiable note by the law merchant. The note was made in New York, and by the law of New York, was a negotiable note. 19 Johnson Rep. 144; 9 J. R. 120; Chitty on bills 195, 197; 10 Am. from 9th London Ed., and if negotiable in New York, negotiable every where. See Chitty on bills, Ed. as above; 167 Story's conflict of laws, 263, 264, 343, 345, 346.

If the note is not negotiable still it was a promisory note, (see note to Smith's Mercantile law, ed. by Halcomb and Gholson, page 208,) and by endorsing it to Lake & Co., Odell and Frink parted with all their property in it. The assignment was absolute, for if not, it would operate as a fraud upon all the subsequent holders. If Odell and Frink wished to make a limited or restricted assignment, they should have so expressed it upon the instrument. See laws Mo. 1845, under the head of bonds and notes. Sec. 2 page 190.


Judge BIRCH delivered the opinion of the court.

The authorities to which we have been referred shed but a faint and ambiguous light upon the question presented by this record. The testimony is equally inexplicit and unsatisfactory, concerning the existence of any general custom upon which we might predicate a rule in this and similar cases ; and the bankers themselves seem to have viewed the transaction, whilst it was in progress, each in a different point of view.

We have not been exempt, therefore, from the solicitude so naturally inseperable from the exercise of what may seemingly be regarded a species of judical legislation, under circumstances where we can bring to the task but little practical observation, or business-like reflection. It has seemed to us, however, that, as a general proposition, a blank endorsement, under the circumstances disclosed in this suit, should be held, prima facie, equivalent to an assignment for value, subject to be filled up by any subsequent assignee, and that, consequently, the defendants may have been justified in so treating it, and giving credit to Lake & Co., accordingly. We are of opinion, notwithstanding, that the plaintiffs should have had, with the jury, the more unequivocal and *explicit* recognition and benefit of any testimony in rebuttal of the presumption alluded to, by having had accorded to them, and given in connexion with the instructions of the defendant, at least the first one which was asked for by the counsel for the plaintiffs.

For the error thus indicated, and in order that the case may be tried upon instructions so plain that the jury may *readily* comprehend their import, the judgment of the court of common pleas is reversed and the cause remanded.