ALEXANDER J. P. GARESCHÉ, EXECUTOR OF VICTOIRE LABA-DIE, Respondent, v. PIERRE CHOUTEAU, JR., et als., Appellants.

1. *Bonds and Notes—Assignor.*—A note payable in this State to A., or order, although not expressed to be for value received, imports a valuable consideration as between maker and payee, and as between payee and assignee. In a suit by the assignee against the assignor, the amount specified in the note is *prima facie* the amount for which the assignee is liable. Under our law there are three classes of notes : 1. Notes negotiable like inland bills of exchange, containing the words, "for value received, negotiable and payable, without defalcation"; 2. Notes payable to order, or bearer, or assigns, under the first section of the act relating to bonds, notes, &c. (R. C. 1855,

27—VOL. XXXVII.

p. 319) ; 3. Notes not drawn payable to order, or bearer, and containing no words of negotiability that can make them assignable under the statutes or otherwise than in equity.

2. *Witness—Assignor—Evidence.*—The assignor of a note is not a competent witness as to facts occurring anterior to the assignment, and his conversations with a witness in the absence of the plaintiff are merely heresay, and are inadmissible in evidence.

3. *Conflict of Laws—Lex Loci.*—A note although made in another State, yet payable in this State, is to be governed by the laws of this State.

### *Appeal from St. Louis Circuit Court.*

The plaintiff sued the defendants, as assignors of a note, as follows :

$3,150.                     OQUAKA, ILL., October 13, 1859.
One year after date, I promise to pay to the order of P. Chouteau, Jr., & Co., at their office in St. Louis, Mo., thirty-one hundred and fifty dollars, value received.

S. S. PHELPS.

[Endorsed.] Pay to the order of Alexander J. P. Garesché, executor of Victoire Labadie, deceased.

P. CHOUTEAU, JR., & Co., by Wm. Moffitt.

Victoire Labadie's Ex'r, 17 Oct. '60, one hundred and fifty dollars on account.

Protest waived.          P. CHOUTEAU, JR., & Co.,
by Wm. Moffitt.

The petition set out these facts, and also that Phelps was not a resident of, nor did he reside in this State.

The answer of the defendants was substantially as follows: That the note sued on was always the property of Victoire Labadie, in her lifetime, and belonged to her executor on her death ; that said note was made payable to P. Chouteau, Jr., & Co. by mistake, or oversight ; as soon as the error was discovered, the defendants corrected the same at the instance and request of plaintiff, by endorsing said note in blank, and transferring the legal title to plaintiff to facilitate the collection thereof. The defendants received no consideration for endorsing said note. Defendants never claimed any interest in said note, and passed the same to plaintiff without recourse ; that if " without recourse " is not expressed in the endorse-

ment, it was left out by mistake; they pray the court to correct the mistake.

It was admitted by the pleadings that when said note fell due, the maker Phelps was non-resident of the State of Missouri, and ever since so continued to be.

The defendants introduced as a witness one Isaacs, who, on his examination in chief, testified that the note was always Mrs. Labadie's and was assigned to the plaintiff merely to enable him to collect it. On his cross-examination, however, he testified that he knew nothing about it; that he was not in the country till long after the making of the note and the transactions between Mrs. Labadie and P. Chouteau, Jr., & Co. He admitted that when the note was assigned to Garesché, that Garesché refused to receive it if endorsed " without recourse," and would not receive it unless fully endorsed by P. Chouteau, Jr., & Co., so as to give him his recourse upon them according to law, and it was after the refusal that the assignment was made to Garesché by P. Chouteau, Jr., & Co.

The court, on motion of the plaintiff, gave the following instructions, viz:

1. The plaintiff moves the court to decide the law to be that if the defendants Pierre Chouteau, Jr., & Co. held the note in suit in their own right, and assigned the same to the plaintiff, and at the time when said note was so assigned, and ever since, the maker Phelps was a non-resident of the State, the plaintiff is entitled to recover.

2. That the legal presumption arising on the face of the note is, that Pierre Chouteau, Jr., & Co. held said note in their own right; and the legal presumption arising on the face of the assignment is, that the same was made for a consideration equal to the face of the note.

3. That said note being on its face payable in St. Louis, Mo., the said note is governed by the laws of Missouri, and is a non-negotiable note.

4. That there is no legal evidence in this cause that the

note sued on was given in consideration of any money of Victoire Labadie, or that said note was ever her property.

To which the defendants excepted.

The court, on motion of the defendants, refused to instruct as follows :

"If the note in suit was the property of Victoire Labadie when it was originally made, and said Pierre Chouteau, Jr., & Co. were named as payees in the note by mistake or oversight, or only for the purpose of enabling them to collect the same for the benefit of said Victoire, and that the name of P. Chouteau, Jr., & Co. was afterwards endorsed on said note for the purpose only of transferring the legal title or legal interest in said note to the executor of said Victoire, then said P. Chouteau, Jr., & Co. did not by the fact of such endorsement become chargeable with the payment of said note as endorsers."

To which the defendants excepted.

The court gave judgment for plaintiff. The defendants in due time moved the court to grant a new trial, and filed their affidavit of newly discovered evidence, &c.

*E. B. Ewing, Hill & Jewett,* for appellants.

The court erred in not allowing the witness Isaacs to state all the circumstances attending the assignment. These were admissible as part of the *res gestæ*. (1 Greenl. Ev. §§ 108, 109, 111, 114.) This was clearly competent. (Hatch v. Dennis, 1 Fairf. 246 ; Kent v. Lowen, 1 Camp. 177.)

As to admissibility of defendants' declarations at time of assignment—Murray v. Oliver, 18 Mo. 406 ; 1 Greenl. Ev. §§ 190–91 ; Bay. Bills, 502–3, and notes ; Pocock v. Billings, 1 Ry. & M. 127.

Defendants also insist that the second instruction, the last clause of it, is also wrong, and should not have been given, as it is not law when applied to the endorsement of a note after it is over due, and the proof in this case was that the note was over due when it was endorsed. In all the cases

where endorsement is presumed, the endorsement has always been made before the note was due; and in all the cases in this State, where the question of the liability of the endorser or assignor of a non-negotiable note has arisen, the endorsement has always been made before the note was due; so that in this State we have no decisions upon the liability of the endorser of a note after it is over due, which note is in form negotiable under the common law, but not so under our peculiar statute. Indeed, it is said by Parsons, (2 Pars. Notes, 13–14,) that it does not seem quite settled what is the obligation or contract of the endorser of a dishonored note. In one case, (Hunt v. Wodleigh, 26 Me. 271,) it was held to be equivalent to drawing a new bill at sight, and the endorser was entitled to demand and notice.

In this State it has been decided that the statute requiring diligence against the maker of a non-negotiable note, dispenses with the necessity of demand and notice, but this decision was made with reference to a note endorsed before it was due, and there is great reason for confining it to that class of paper, for it is only where the note is endorsed before it is due that any such contract can be presumed as that decision is based upon. But when the note is over due when it is endorsed, no such contract can be presumed.

The proof in this case was uncontradicted that there was no consideration for the endorsement, and that the note was over due when endorsed, and therefore the second instruction was wholly inapplicable to the case as made before the court.

But further, if the plaintiff should be entitled to anything in the case, he could only recover the amount of consideration paid for the note. This is the law even when the note is endorsed before it is due. (Smallwood v. Woods, 1 Bibb., Ky., 545; Spratt v. Kinny, 1 Bibb., Ky., 596; Smith v. Harley, 8 Mo. 560; 2 Bibb. 425; 1 Mar., Ky., 544; Blank v. O'Fallon, 1 Mo. 481.)

Our statute of 1835 and 1845 only made bonds and notes assignable, and said that the assignee of such may maintain

a suit against the assignor only in one of the following cases, etc., etc. In the revision of 1855 "accounts" were put in, and the same provision is made to apply to the assignor of accounts.

It is insisted that this statute does not give the assignee any right of action which he did not have before against an assignor; that the whole law upon the subject, as to notes and bonds, plainly contemplates assignments made before they are due, as no case can be found in the books where the liability of an assignor after the bond or note was due has been discussed, and therefore that the assignee of a note over due is left to the law of contracts to enforce his right against the assignor; or that he must resort to the common law as to notes, and treat the assignment as a bill drawn by the assignor on the maker in favor of the assignee, according to the law as laid down in the case cited from the Maine Reports, and make demand on the maker, and notify the endorser or assignor.

*Glover & Shepley*, for respondent.

I. The note sued on being payable in St. Louis, is governed by the laws of the State of Missouri. (Edw. Bills, 167, 170–1; 8 Johns. 190; 2 Burr. 1077; 35 Barb. 182; Vinson v. Platt, 21 Geo. 135; Schofield v. Days, 20 Johns. 102.)

II. The note sued upon is not a negotiable note under the laws of the State of Missouri, and it being admitted that Phelps the maker was, at the making of the note, a non-resident of this State, and had so always continued to be, the liability of the endorsers P. Chouteau, Jr., & Co. became fixed.

The statute concerning bonds, notes and accounts, (R. C. 1855, p. 323, § 6,) provides that the assignee may maintain an action against the assignor when the maker is not a resident of, nor residing within, the State. Such have also been the decisions—Ivory v. Carlin, 30 Mo. 142; Muldrow v. Agnew, 11 Mo. 616.

III. Upon the transfer of a note, the legal presumption is that the assignor was the owner of the note in his own right,

and that the transfer was for a valuable consideration equal to the face of the note. (Muldrow v. Agnew, 11 Mo. 616, and the cases there cited in plaintiff's brief; Stapp v. Anderson, 1 A. K. Marsh. 538; Allen v. Pryer, 3 A. K. Marsh. 305; 2 Wash. 219, 230, 232; 5 Ran. 377; 2 Bibb. 424; 5 Cranch, 332.)

The instruction does not pretend to lay down the rule as to the measure of damages between the assignor and the assignee, but simply says what, *prima facie*, the endorsement imports. It leaves the defendants to show that the real consideration was different from that which the assignment imports.

HOLMES, Judge, delivered the opinion of the court.

The note sued on was drawn payable to the order of the defendants, the payees, who endorsed it to the plaintiff. It was not expressed to be for value received, nor did it contain the words "negotiable and payable, without defalcation." The decision of the case depends upon the construction of the instructions which were given for the plaintiff. They are predicated upon the assumption that the note imported a valuable consideration, both as between the maker and payees, and as between the endorsee and endorsers. The question is whether this construction be correct under the statute concerning bonds, notes, and accounts. (R. C. 1855, p. 319.)

It is declared by this act that all notes in writing, payable to order or bearer, for any sum of money or property, though not expressed to be for value received, shall import a consideration, and be due and payable as therein mentioned. They are declared to be assignable in writing, or by endorsement, so that the assignee may maintain an action on them in his own name; but the assignee shall obtain no greater title or interest in them than the assignor himself had at the time, or before notice to the maker; and the maker may avail himself of any defence against the assignee that he could have made against the assignor. Protest and notice are dispensed

with, and, in place thereof, the right of the assignee to sue the assignor is made to depend upon his using due diligence to sue the maker, unless he be insolvent, or a non-resident. Under the law merchant, notes were written promises to pay money ; and if they were made payable to order, or bearer, or assigns, they were negotiable ; that is, they contained words which made them assignable, transferable, or negotiable ; but if they did not contain such words, they could not be transferred or negotiated, so as to enable the assignee to sue in his own name, and they were non-negotiable notes. (3 Kent, 90 ; Sto. Prom. Notes, §§ 43-4.) Such negotiable notes implied value received without those words being inserted in them, and there arose, *prima facie*, a presumption of validity and of a valuable consideration, and the burden of proof was shifted upon the other side. An endorsement by the payee of such notes raised an implied contract that the endorser had a good title to the note, and that it would be paid by the maker, or if not, that the endorser would pay it himself, upon protest and notice ; that is, a valuable consideration was implied as between the endorser and the endorsee, as well as between the payee and the maker. (3 Kent, 108.) The statute dispenses with this implied warranty of good title, as well as with the protest and notice, and substitutes in place of it an implied warranty only of as good a title as the assignor himself had at the time of the assignment ; but there is nothing in the act which dispenses with the implied warranty or *prima facie* presumption of a valuable consideration, whether as between the assignor and the assignee, or as between the payee and the maker. It is expressly declared that such notes shall import a consideration, and be assignable in writing, or by endorsement, so that the assignee may maintain an action on them in his own name, either against the maker, or against the assignor. If a consideration were not to be implied, the contract on the face of the note would be *nudum pactum*, and no action could be maintained on it ; or, if he could aver and prove a specific consideration, as upon a mere contract, he would have no

occasion to invoke the aid of the act; he could do that on the general principles of the law of contracts; and a construction which should require that, would render the assignability or negotiability created by the act next to useless, if not wholly nugatory.

Such notes contain words of assignability and negotiability in the sense of the law merchant, as well as in the sense of the statute. They create a privity of contract resting on the original consideration. Under the law merchant, notes containing no words of negotiability or assignability were for that reason non-negotiable, and the endorsement or assignment of them did not enable the endorsee or assignee to sue on them in his own name at law, though he might do so in equity. (Sto. Prom. Notes, § 128.)

In such case there was no privity of contract between the assignee and the parties antecedent to his immediate assignor; though even then, as between the payee and his immediate endorsee, the endorsement will ordinarily create the same liabilities and obligations on the part of the payee as in case of negotiable notes (Sto. Prom. Notes, § 128); and there are authorities which hold that, in such case, a consideration will be implied both at law and in equity. (Mackie's Ex'r v. Davies, 2 Wash. 219; Stapp v. Anderson, 1 A. K. Mar. 538; 3 A. K. Mar. 305; Biddle v. Mandeville, 5 Cranch, 332.)

In fact, under our laws, there are three classes of notes. The first consists of notes which are negotiable within the meaning of the act concerning bills of exchange. Being expressed to be for value received, negotiable and payable without defalcation, they are negotiable in like manner as inland bills of exchange.

The second class consists of notes which are drawn in accordance with the provisions of the act concerning bonds, notes and accounts, and which, as such, possess a qualified negotiability only. They are negotiable notes, under the restrictions and limitations of that act.

The third class may consist of notes which are utterly non-

negotiable under either statute, or by the law merchant. This class will certainly include all such notes as are not drawn payable to order, or bearer, or assigns, and contain no words of negotiability that can make them assignable under the statutes, or otherwise than in equity.

The note in question here was not a non-negotiable note, but a negotiable note, having the qualified negotiability that is given to such notes by the statute; and, being such, a valuable consideration was implied in the endorsement of it, *prima facie*, as a presumption of law, between these parties, as well as between the maker and the payees. The burden of proof rested upon the defendants to rebut this presumption. In Muldrow v. Agnew, 11 Mo. 616, an instruction to this effect was said to be well enough; and in Odell v. Presbury, 13 Mo. 330, where the question was upon a note of the same kind, payable to order, the court expressed the opinion that "the blank endorsement of a note not negotiable under our statute [that is, the statute concerning bills of exchange, but negotiable in the sense of the act concerning bonds and notes] should be held to be *prima facie* equivalent to an assignment for value, subject to be filled up by any subsequent assignee."

We are not aware of any case which has given a different construction to this act. A consideration being implied by law, and the force of the statute, it was, of course, unnecessary for the plaintiff to aver and prove a specific consideration in order to sustain his cause of action. (Bristol v. Warner, 19 Conn. 7.)

A number of cases have been cited on the other side of the question, and among them the cases of Whistler v. Bragg, 31 Mo. 124, and Elliott v. Thralkeld, 16 B. Mon. 343; but these cases, so far as the reports show, were founded upon notes which contained no words which made them assignable, transferable, or negotiable. They were upon notes non-negotiable under the law merchant, as well as under the statutes; and the cases are not in point here. Such appears to have been the case in Duncan v. Littell, 2 Bibb. 242.

The defendants excepted to the exclusion of certain conversations between the witness and one of the assignors, about endorsing the note, before it was done. The assignor of a note is not a competent witness to facts occurring anterior to the assignment, and his conversations with the witness in the absence of the plaintiff were mere hearsay at best. His statements might have been admissible against him, but certainly not in his favor. We think the testimony was properly excluded.

There was no basis in the evidence for the instruction which was asked by defendants, and it was rightly refused.

Upon the principles above established, the first three instructions given for the plaintiffs laid down the law correctly enough.

The fourth instruction was to the effect that there was no evidence in the case that the note sued on was given in consideration of any money of Victoire Labadie, or that said note was ever her property. This proposition is in general terms the converse of that propounded in the instruction which was refused for the defendants.

As applied to the issue on trial, it is not very clear what they mean. If it were, as it would seem, that there was no evidence which tended to prove that the consideration of the note was money of Mrs. Labadie, which she had entrusted the defendants to loan to a person selected by her; that she took the responsibility of the loan on herself; and that the note was drawn payable to the firm by mistake, when it should have been drawn payable directly to her; and that being so drawn, it was endorsed for the mere purpose of transferring the legal title, then, we think, the instruction was properly given, for the same reasons that the defendants' instruction was rightly refused. The evidence, so far as it showed anything, rather tended to prove that the firm had taken this note on their own responsibility; and if it were true, as the defendants seemed to contend, that they had loaned money on that note which belonged to Mrs. Labadie, without her knowledge or direction, and had the note drawn

payable to themselves, a jury might very well be warranted in inferring that they intended to place themselves between her and the risk of loss, and that the true consideration for the endorsement was the money which Mrs. Labadie had already put into their hands. But it is not our province to discuss the evidence.

There was certainly no evidence to support the proposition contained in the instruction as therein stated. Upon the ground of newly discovered evidence, we do not think the case made was sufficient to warrant us in interfering with the discretion of the court below.

The burden of proof was on the defendants to rebut the *prima facie* case made by the plaintiff.

There is no error in the instructions; and the verdict being for the plaintiff on the facts, the judgment must be affirmed. The other judges concur.