GEORGE H. MANN, *et al.*, Appellants, *vs.* WILLIAM BEST, *et al.*, Respondents.

| 62 | 491 |
| 96 | 240 |
| 62 | 491 |
| 105 | 96 |
| 105 | 102 |
| 62 | 491 |
| 49a | 47 |
| 50a | 118 |
| 62 | 491 |
| 115 | 532 |
| 62 | 491 |
| 119 | 302 |
| 62 | 491 |
| 131 | 578 |

1. *School funds, loan of—County courts—Mortgages—Statute, construction of.*— Section 22 of the act of 1855 (R. C. 1855, p. 1424) is merely directory, but where a mortgage is taken under that act for the loan of school funds, the statute must be in all respects complied with; still a mortgage taken by the county for the loan of such funds, not under the statute, but good at common law, and containing a power of sale by the mortgagee or his agent, is valid.

2. *Evidence—Res gestæ—Private entry—Certificate made at the time—Party dead.*—Notices of a sale under a mortgage were delivered by the mortgagee to a sheriff to post up, and the sheriff certified on the back of the advertisement the facts as to his posting up the notices and dated his certificate. At the time of the trial, the sheriff was dead, but a witness testified that the sheriff wrote and signed the return in his presence and on the day it bore date. *Held,* that the certificate was a private entry, but was admissible in evidence as part of the *res gestæ.*

3. *Mortgages—Sales under—Collusion between trustee and purchaser.*—A., as agent for the mortgagee, sold the land mortgaged· to B., having previously agreed with B. to furnish half the purchase money and divide the profits. *Held,* that the sale was a fraud on the mortgagor and mortgagee.

4. *Sheriff's sales—Purchaser—What title acquired—Recording acts.*—A purchaser on execution buys only the title of the judgment debtor, and if that title was subject to equities, it remains so in the hands of the buyer, although they may be totally unknown to him. This general proposition is much modified by the recording acts of this State. (Hill vs. Paul, 8 Mo., 480; Davis vs. Ownsby, 14 Mo., 175; Valentine vs. Havener, 26 Mo., 133.)

5. *Conveyances—Quit-claim—What title acquired.*—A purchaser by quit-claim obtains just such title as the vendor had, and the land in his hands remains subject to the equities attaching to it in the hands of the vendor, though they may be unknown to the purchaser.

*Appeal from Gentry Circuit Court.*

*Bennett Pike, with G. W. Lewis,* for Appellants.

I. The county court had no right to take such a mortgage for school moneys. It had no power to do any act in relation to the loaning of the school fund, except such as the laws of the State specifically gave it. (Ray Co. vs. Bentley, 49 Mo., 236; R. C., 1855, p. 1424, § 22; Id., p. 1425–6, § 30; Norcum vs. D'Oench, 17 Mo., 117.)

II. The mortgagor in the mortgage could confer no power upon said county court to appoint an agent to sell said mort-

gaged lands, or to convey the same, nor could the county court make good the act of the agent by ratification. (Hodges vs. City of Buffalo, 3 Den., 110; English vs. Smock, 34 Ind., 115; 7 Am. R., 215; Frees vs. Ford, 6 N. Y., 176.)

III. The sheriff's return, that he had posted the notices, is not evidence. His certificate of the fact is a mere statement of a private individual.

IV. The agent, selling the land, and the purchaser, were jointly interested in the purchase. This renders the sale void so far as the purchaser is concerned, and his vendee who is not an innocent purchaser. (Wooton vs. Hinkle, 20 Mo., 290; Hook vs. Turner, 22 Mo., 333; Durfee vs. Moran, 57 Mo., 379; Thornton vs. Irwin, 43 Mo., 153.)

V. Defendant was not an innocent purchaser as he took by quit claim deed. (Ridgeway vs. Holliday, 59 Mo., 444.)

*Isaac P. Caldwell, with J. C. Howell,* for Respondents.

I. Foreclosure may be accomplished in accordance with the terms of a power of sale. (Beatie vs. Butler, 21 Mo., 321; 1 Hill. Mort., 3d ed., 130, 140; 2 Id., 51, 74, 78, 79, 82–3; Bergen vs. Demarest, 4 John. Ch., 37; Elliott vs. Wood, 53 Bart. [N. Y.], 285: Tuthill vs. Tracy, 31 N. Y., 157; Cormerais vs. Genella, 22 Cal., 116; Johnstone vs. Scott, 11 Mich., 232; Donnelly vs. Simonton, 7 Minn., 167; Leffler vs. Armstrong. 4 Iowa, 482.)

II. The statute (R. C. 1855, p. 1424, § 22) is directory. (Marion Co. vs Moffatt, 15 Mo., 604; Pot. Dwar. Stat., 221–6 and notes.) The mortgage is distinguished from those mentioned in Jones vs. Mack (53 Mo., 147), and Honaker vs. Shough (55 Mo., 472). They were drawn according to the statute. In the first, the sheriff sold without an order. In Honaker vs. Shough, the order of sale misdescribed the land, and did not correctly recite the debt, so as to identify the mortgage. This is simply a mortgage with power of sale, and is good at common law.

III. The property being in the hands of an innocent purchaser for value, redemption will not be allowed unless the

sale is absolutely void. If plaintiff had any remedy, it was against other parties. (Rutherford vs. Williams, 42 Mo., 34; Goode vs. Comfort, 39 Mo., 328.)

IV. The copy of the notice and the return, showing the posting of the notices, were properly admitted in evidence. (1 Greenl. Ev., §§ 115, 116.)

V. The petition contains no equity. There is no offer to pay the whole amount of the mortgage debt, but only a fractional part of what is due. (Mullanphy vs. Simpson, 4 Mo., 319; Polk vs. Clinton, 12 Bes., 59; 2 Black. Com. [Sharswood's notes], 159, note 8; Crafts vs. Crafts, 13 Gray, 363; Hill Mort., 1st vol., 402–3, and notes.)

NAPTON, Judge, delivered the opinion of the court.

The plaintiffs in this case, who are four of the five heirs of Jeremiah Wright, by their petition, filed in 1872, ask to redeem a mortgage given to Gentry county by said Wright to secure the sum of $1,010, borrowed of the school fund. The mortgage was given in 1859, and the deed stated that the party of the second part (Gentry county) " is hereby authorized and empowered by the said party of the first part, by her agent to be appointed by the county court for that purpose, to sell said described premises, or any part thereof, first giving twenty days' notice, etc."

Wright, the mortgagor, died in 1862, and in April of that year, after Wright's death, the county court of Gentry county appointed C. G. Comstock, who was then county attorney, as a commissioner to " foreclose the mortgage." Comstock advertised the land for sale by a notice, which he handed to the sheriff, and the sheriff's return upon the advertisement was in writing, and was, that he had posted up copies of it in six public places in Gentry county, at least twenty days before the day fixed for the sale in said notice. The sheriff was dead at the trial, and the certificate was given in evidence as proof of the publication being in conformity to the terms of the mortgage. One Cunningham became the purchaser at the price of $400, which was about $1.40 per acre for the entire

tract of 280 acres. The farm was worth. from two to three thousand dollars.

Before the sale, an arrangement was made between Cunningham and Comstock, that Comstock would furnish half the money for the purchase, and he and Cunningham would jointly reap any profits which might arise from the sale. The sale was duly reported to the county court, who approved of it, and Comstock made a deed to Cunningham, to the form of which no objections are made.

In 1864 Cunningham sold this land, or at least conveyed his interest in this land by a quit-claim deed to the defendant, Best, who had shortly before migrated from Kentucky, and who, it appears from the testimony, had no information in regard to the interest of Comstock in this land, or to the arrangement between Comstock and Cunningham. Best took a quit-claim deed and paid $2,000 for it, and in his defense sets up that he was a *bonâ fide* purchaser for a valuable consideration without notice. After Best went into possession, he paid $100 to the oldest son of Wright for his interest, and took a relinquishment from him of his interest, and also executed a paper to the administrator, promising to pay $100 to each of the other heirs, on their arriving at age, for their interest in the land.

The plaintiffs ask that they be allowed to redeem four-fifths of the mortgage, and that Best be required to redeem the other one-fifth. The circuit court, after hearing all the evidence, decided for the defendant, and from this judgment an appeal is taken to this court.

For the plaintiffs it is insisted in this court, that the mortgage taken by the county court was void, since it did not conform to the requisitions of the statute concerning the loan of school funds; that the county court had no power to appoint an agent or commissioner to sell the mortgaged lands, or to ratify such a sale after it was made by the agent; and the decision of this court in Ray Co. vs. Bentley (49 Mo., 236), is mainly relied on to show that this court can only control the school fund in the manner specifically pointed out by law.

In that case the county bought in the mortgaged land through the agency of the county court, and this was held beyond the power of the court, and against the general policy of the act regulating the disposition of this fund. But we consider the 22d section of the act of 1855 (R. C. 1855, p. 1424) as merely directory. It specifies the kind of mortgage which the court is required to take, and is so particular as to give in substance all the provisions it should contain. Where the mortgage is taken under these provisions, the statute must be in all respects complied with; but we do not see that the interest of the school fund would be advanced by holding that any other mortgage, which would be good at common law, should be held void. The mortgage in this case did not follow the prescribed form, but was a mortgage with a power of sale, conferred by the mortgagee in the instrument, to be executed in a mode pointed out in the mortgage. The neglect of the county court to follow the directions of the statute ought not to destroy a security otherwise good and effectual to accomplish the same purposes.

The power of the county court to appoint an agent to sell the land, upon the failure of the mortgagor to pay the debt, is conferred on the court expressly by the mortgagor himself. This power is not derived from the statute, and the proceeding under it cannot be governed by the statute. A mortgage with a power of sale in the mortgagee, or by his agent, has been repeatedly recognized as valid by this court, and no reason suggests itself why it should not be so where a county is the mortgagee. The order of the county court, directing the agent to "foreclose," was substantially an order to sell, as that was the mode of foreclosure authorized by the mortgagor.

In regard to the proof of the publication of the advertisements, there is some ground for doubt; but I think the proof was admissible. Had the sheriff been required by law to put up such notices, there could be no question of the admissibility of his certificate; but, as we have not been referred to any statute, which made it his duty in proceedings of this kind,

the evidence must stand on the ground of a private entry. The proof was, however, that the notice, on which this return was made, was placed in the hands of the sheriff by the commissioner to be posted up ; that the sheriff wrote the return and signed it in his presence, and that it was written on the day it bears date, and the sheriff was dead before the trial. I cannot see very well how under the circumstances any *stronger* proof could be offered. The sheriff was a public officer, having no motive to make a false entry on the paper handed to him, and the entry was made at the time the transaction was still in progress. It was a part of the *res gestae.* (Greenl. Ev., § 115 ; Doe vs. Sanford, 3 B. & Ad., 890 ; Poole vs. Decus, 1 Burgh [N. C.], 654.)

The important point, however, on which the merits of the case depend, is whether the defendant Best is a purchaser for value without notice ; for if he is, whatever may have been the infirmity of the title conveyed to Cunningham, the defendant, Best, could not be reached. That the plaintiffs had a right to redeem this mortgage so long as the title remained in Cunningham, is well established. The collusion between Comstock and Cunningham rendered the sale a fraud both upon the mortgagee and mortgagor. (Thornton vs. Irwin, 43 Mo., 153.)

The evidence in this case shows very clearly, that Best was a purchaser for value and without notice of any infirmities in Cunningham's title. He was a stranger in the country and was, so far as the record shows (Best, Cunningham and Comstock being all witnesses in the case), totally ignorant of the collusion between Comstock and Cunningham ; and he gave a full, or, at least, fair price for the land.

But the question is, what did he buy ? It is well settled as a general proposition, that a purchaser under execution is not a purchaser that comes within the protection of this well established equitable rule, because he buys only such interest as the judgment debtor has ; and, if the interest is subject to equities, although totally unknown to the buyer, the title is still subject to the same equities. (Hart, Leslie & Co. vs. F. & M. Bank, 33 Vt., 252 ; Whitford vs. Gnager, 3 Hare, 416.)

This proposition, however, is very much modified by our recording acts (See Hill vs. Paul, 8 Mo., 479 ; Davis vs. Ownsby, 14 Mo., 175 ; Valentine vs. Havener, 20 Mo., 134) ; but as no question arises on it here, it is useless to consider the modifications effected by our recording act. (See, also, Black vs. Long, 60 Mo., 182.) And such seems to be the settled law in regard to a buyer, who takes a quit-claim deed. In Oliver vs. Pyatt (3 How., 333) Mr. Justice Story observes, " another significant circumstance is, that this very agreement contained a stipulation that Oliver should give a quit claim deed only for the tracts ; and the subsequent deeds, given by Oliver to him accordingly, were drawn up without any covenants of warranty, except against persons claiming under Oliver or his heirs and assigns. In legal effect, therefore, they did convey no more than Oliver's right, title and interest in the property ; and under such circumstances, it is difficult to conceive how he can claim protection as a *bona fide* purchaser, for a valuable consideration, without notice, against any title paramount to that of Oliver, which attached itself as an unextinguished trust."

And in Brown vs. Jackson (3 Wheat., 449) a conveyance of the right title and interest in a tract of land was held only to convey the estate, which the grantor at the date of the deed possessed, and would not convey an after acquired title. The same doctrine was asserted by this court in Bogy vs. Shoab (13 Mo., 330).

And in May vs. Lectrine (11 Wall., 232) Mr. Justice Swaine says : " On the 27th of July, 1859, Desaint conveyed by a deed of quit-claim to Ebenezer Cook. The evidence satisfies us that Cook had full notice of the frauds of Powers, and of the infirmities of Desaint's title. Whether this was so or not, having acquired his title by a quit-claim deed, he cannot be regarded as a *bona fide* purchaser without notice. In such cases the conveyance passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey. Cook occupied the same relation to the property as Desaint, his grantor."

And so, in conformity to these views, is the recent decision of this court in Ridgeway vs. Holliday (59 Mo., 444).

In the case now under consideration it seems probable, from all the evidence, that the defendant, Best, was guilty of no bad faith in making the purchase he did ; but as he bought only the title of Cunningham, and that title, though on its face valid and complete, was subject to be set aside by reason of the fraudulent arrangement between Comstock and Cunningham, he must abide by the risks of such infirmities as the nature of his acquired title subjected him to.

The plaintiffs were entitled to redeem four-fifths of the land ; with the remaining interest of one-fifth vested in the defendant, Best, by purchase from one of the heirs of Wright, the plaintiffs have no concern.

The judgment is, reversed and the case remanded. The other judges concur.