SCHRADSKI, *Appellant*, v. ALBRIGHT *et al.*

1. **Evidence.** Declarations by one, tending to controvert facts alleged in his pleading, are admissible in evidence against him.

2. **Absolute Conveyance,** WHEN A MORTGAGE. A conveyance absolute in form, if it be made clearly to appear that, at the time of its execution, it was intended only as a security for a debt, will be treated in equity as a mortgage.

3. **Quit-Claim Deed, Purchaser Under.** A purchaser by a quit-claim deed acquires only the title the vendor had, and the land remains subject in his hands to the equities attaching to it in the hands of the grantor.

4. **Equity**; LACHES. The activity of equity powers cannot be successfully invoked when a party has slept on his rights, and influenced others to act on the confident belief that he has abandoned them; there being, however, no fixed standard by which to determine when laches will constitute a defence, but each case, when it arises, must be determined according to its own particular circumstances.

5. **The rule** applied to this case and the equity of redemption of plaintiff in land conveyed by him denied.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

AFFIRMED.

*Marcy K. Brown* and *W. H. Leavitt* for appellant.

(1) The court should not have admitted the evidence offered by defendants to show that they were innocent purchasers without notice of plaintiff's equities. No equitable defence was pleaded. *Northup v. Ins. Co.*, 47 Mo. 443; *Greenway v. James*, 34 Mo. 326; *Newham v. Kenton*, 79 Mo. 382. (2) So the facts constituting an equitable estoppel, testified to by the witness, King, were improperly admitted. *Bray v. Marshall*, 75 Mo. 327; *Noble v. Blount*, 77 Mo. 235; *Weise v. Moore*, 22 Mo. App. 530. (3) A defendant cannot introduce evidence to support a defence not set up in his answer. *Weil v. Poston*, 77 Mo. 284; *Kuhn v. Weil*, 73 Mo. 213; *Irwin v. Childs*, 28 Mo. 576; *Winston v. Taylor*, 28 Mo. 82. (4) A conveyance to secure an existing debt is a mortgage, whatever may be the form of the deed, or however absolute it may appear on its face. Oral evidence is competent to establish the fact of its being a security. *O'Neill v. Capelle*, 62 Mo. 202; *Brant v. Robinson*, 16 Mo. 129; *Matson v. Capelle*, 62 Mo. 235; *Desloge v. Ranger*, 7 Mo. 327. (5) The defendants holding under the Frankenthal conveyance, with its clause of release and satisfaction, cannot be innocent purchasers

Schradski v. Albright.

without notice. *Mason v. Black*, 87 Mo. 341; *Orrick v. Dunham*, 79 Mo. 174; *Sensenderfer v. Kemp*, 83 Mo. 581; *Rhodes v. Outcalt*, 48 Mo. 370. (6) A purchaser of land, with notice of prior equities, takes subject to such equities. *Bronson v. Wanzer*, 86 Mo. 408; *Gibson v. Lair*, 37 Mo. 188; *Major v. Buckley*, 51 Mo. 227. One taking under a quit-claim deed cannot claim to be a purchaser without notice. *Campbell v. Laclede Gas Co.*, 84 Mo. 352; *Mann v. Best*, 62 Mo. 491; *Stivers v. Horne*, 62 Mo. 473. (7) The plaintiff was not guilty of laches.

*John W. Wofford* for respondents.

(1) The evidence of King, which is complained of, was properly admitted. It went to disprove the charge in plaintiff's petition that defendants bought with knowledge of the facts set up in the petition, and was, therefore, competent. *Northup v. Ins. Co.*, 47 Mo. 435. (2) The defendants should have made and pleaded a tender. *Cravens v. Moore*, 62 Mo. 178. (3) The plaintiff, by standing by, and seeing people buying the property and building on it, and waiting over six years to assert his rights, was guilty of such laches as to bar his recovery. *Anderson v. Fry*, 18 Ill. 94; *Milward v. Thanet*, 5 Ves. 720; *Rogers v. Sanders*, 16 Me. 92; *Patterson v. Maitz*, 8 Watts, 374; *Young v. Daniels*, 2 Ia. 126.

NORTON, C. J.—This is a suit in equity, begun on the twenty-eighth of March, 1884, in which the plaintiff substantially avers in his petition, that, being the owner in fee of lot six, in block three, in Mumford and Fancher's addition to Kansas City, he, on the tenth day of November, 1877, conveyed the same, by general warranty deed, to Alexander and Albert Frankenthal, for the expressed consideration of two hundred dollars; that, at the time said conveyance was executed, it was

understood and agreed that said deed, though conveying an absolute estate, was in fact merely given to secure the payment, by plaintiff, to said Frankenthals, of the sum of fifty dollars, when demanded by them, and that, upon payment of said sum, the Frankenthals were to reconvey the lot to plaintiff, and that the deed was made on the expressed condition that the grantees therein were to hold the premises only as security for said sum.

It is then averred that thereafter, on the twenty-eighth of April, 1879, said Frankenthals, without plaintiff's consent, executed a deed of quit-claim to one Scott, releasing all their right, title, and interest in said lot and in full satisfaction of the deed made by plaintiff to them ; that, afterwards, defendant acquired the interest of said Scott, with full knowledge that he had no right to convey the same, freed from the equity claimed by plaintiff.

The petition then asks for an accounting, and that he be allowed to redeem. The answer was a general denial. On the trial, judgment was rendered for defendant and the bill dismissed. Plaintiff, on his appeal from the judgment, assigns for error the action of the court in receiving improper evidence, and in rendering judgment on the evidence in favor of defendant.

The evidence showed that plaintiff, by his deed of general warranty, dated the tenth of December, 1877, conveyed the lot in controversy, absolutely and unconditionally, to Albert and Alexander Frankenthal. The consideration expressed in the deed was two hundred dollars, and at the time of said conveyance the lot was vacant and unimproved. The evidence on the part of the plaintiff tends further to show that the two hundred dollars, mentioned as a consideration, was not paid, and that plaintiff executed the conveyance to relieve his father, then in bankruptcy, and to enable him to get his discharge, and to secure thepayment of a debt of fifty

dollars, which his father owed the Frankenthals, which they demanded should be secured before they would consent to the discharge of his father's debt, and that it was verbally agreed, at the time the deed was executed, between plaintiff and the agent of the Frankenthals, that if plaintiff paid the said debt when demanded of him that they were to reconvey the lot to plaintiff.

The evidence also showed that, on the twenty-ninth of April, 1879, the said Frankenthals conveyed said lot by quit-claim deed, for the expressed consideration of two hundred dollars, to one Scott, which contained the following recital : "This deed of quit-claim being made in release and satisfaction for a certain deed, dated the tenth day of December, 1877, recorded in the recorder's office, within and for the county of Jackson, aforesaid, in deed-book B, number 15, at page 328."

The evidence showed that said Scott, on the tenth of May, 1879, conveyed by deed of general warranty, which recited a consideration of two hundred dollars, said lot to Laura Shelby, and that the said Shelby, on the tenth of February, 1880, conveyed said lot by general warranty deed, to defendant, Angeline Albright, for the consideration of one thousand dollars, and that said Albright, on the fourth of May, 1883, conveyed one-half interest in said lot to defendant, Linninger. All of the above-mentioned deeds were filed for record and recorded respectively at or about the time of their execution. The only improvement on the lot when Mrs. Albright purchased, was a small frame house, worth one hundred and fifty dollars, and since her purchase she built a house on it costing about twelve hundred and fifty dollars.

The evidence on part of defendants tended further to show that, previous to the purchase by Mrs. Albright, Mr. King, an attorney, investigated the title for her, informed the plaintiff that she was about to purchase the property, and asked him who the Frankenthals were,

and whether, he, plaintiff, had any interest in the property, and that plaintiff in reply told him that he had sold the property to the Frankenthals, and that they were all right. It also tended to show that plaintiff had not paid any taxes on the property after he conveyed it to the Frankenthals, nor given any attention to the property, nor made any protests while the improvements were being put on it, nor set up any interest in it till this suit was brought, after the lapse of more than six years from the time he made his conveyance in 1877, to the Frankenthals, the property in the meantime having appreciated in value. The evidence also tended to show that said Scott paid all the property was worth at the time he bought it, one witness directly swearing to that fact.

During the trial plaintiff, who was a witness in his own behalf, was asked: "Did King go to you at the time he was looking up the title of the property for defendant, and tell you that Mrs. Albright was about to purchase the property and pay full value for it, and that he found some irregularity in the title, and wanted to know who Frankenthal was, and if married, and that, in answer to his question, you told him that you had sold the property to the Frankenthals, and that they were all right, and that you had no interest in the property?" This question was objected to on the ground that it was irrelevant, and raised an issue not presented by the pleadings, and it is insisted that the court erred in overruling the objection and receiving the answer to the question, which was to the effect that he had never had any such conversation with King.

King was subsequently introduced by defendant, and testified that he did have such a conversation with plaintiff, and that, in reply to his question, was told by plaintiff that he had sold the lot to the Frankenthals, and that they were all right. This evidence was also objected to on the same grounds above stated, and the

action of the court in overruling the objection was excepted to. No error was committed in these rulings. The evidence was clearly admissible for the purpose (if for no other) of impeaching the witness. But we are of opinion that it was also properly admitted under the issues made by the pleadings, inasmuch as it tended to show, not only that plaintiff at that time repudiated the claim set up in his petition, that he had an equitable interest in the lot, but also to negative the averment made in the petition that defendant bought with notice of his equity.

It has been settled in this state in a number of cases (of which the case of *O' Neill v. Capelle*, 62 Mo. 202, is a representative) that a conveyance absolute in form, if it be made clearly to appear that at the time of its execution it was agreed and intended only as a security for a debt, that it will be treated in equity as a mortgage, and that the grantor will be allowed to redeem, not only as against the grantee, but also as to all holding under him with notice or knowledge of such equity. It is also held in a number of cases (of which the case of *Mann v. Best*, 62 Mo. 491, is a representative), that a purchaser by quitclaim deed acquires thereby only the title the vendor had, and the land in his hands remains subject to the equities attaching to it in the hands of the grantor.

While the principles above stated have been approved in the cases cited, it seems to be equally well-settled in a number of cases, of which the case of *Landrum v. Union Bank*, 63 Mo. 48, is a type, that "the activity of equity powers cannot be invoked where a party has negligently slept upon his rights, and induced others to act upon the confident belief that he has abandoned them." There is no fixed rule by which to determine when laches will constitute a defence, but each case, when it arises, must be determined according to its own particular circumstances. *Stevenson v. Saline County*, 65 Mo. 425.

Applying these principles to the case before us, we are of the opinion that, by the failure of defendant to assert his claim to equitable relief for more than six years, during which time he gave no attention to the property, paid no taxes, asserted no claim, and during which time the property was being sold and improved, and during which time the defendant, Mrs. Albright, was encouraged by what plaintiff said to her attorney, King, to buy the property and pay the full price of one thousand dollars for the lot, and put up improvements on it at a cost of twelve hundred and fifty dollars, he has been guilty of such laches, as to justify a denial of the relief he asks.

On the whole record, the judgment is for the right party, and it is hereby affirmed with the concurrence of the other judges.