# FRANKLIN et al., Appellants, v. CUNNINGHAM et al.

### Division One, March 15, 1905.

1. **REFORMING DEED: Title Bond: Carlton's Abstracts: Prima Facie Case: Oral Testimony.** A recital in Carlton's Abstracts, which by a special statute are prima facie evidence of the truth of recitals therein, that by a title bond the owner of land agreed to convey property to "Missouri E. Franklin" is overcome by the clear and unequivocal testimony of Missouri E. Franklin and another disinterested witness that they had read the title bond before it and its record were destroyed by fire and that it bound the owner to convey the land to "Missouri E. Franklin and Robert G. Franklin's heirs," when considered in connection with a recital in the administrator's deed of like purport; and, hence, said deed should be so reformed as to convey the lands to her and Robert G. Franklin's heirs as cotenants of an equal interest.

2. ———: Limitations: Married Woman. The fact that one of the heirs was a married woman and has remained so continuously ever since the Statute of Limitations began to run in favor of the defendants, does not bar her from having a deed to her mother alone reformed in accordance with an agreement in a title bond to convey the land to her mother and her children, although such deed had been of record fifteen years when the suit was brought.

3. LIMITATIONS: Female Minor: Coverture. The fact that a female plaintiff after the Statute of Limitations began to run, became covert, during her minority, did not prevent the running of the statute against her. Legal disabilities can not be tacked.

4. ———: Adverse Possession. Adverse possession not only bars actions but confers title.

5. ———: ———: As to Some of Plaintiffs. An action may be barred by limitation as to some cotenants and not barred as to the others who were under legal disability to sue.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ralph Wammack* for appellants.

(1)    The administrator's deed shows upon its face that it was made from, and attempted to follow, the bond for deed, which formed the basis of the purchase by R. G. Franklin, and hence, under the law, the bond for deed thereby became incorporated in said deed and became a part thereof, and if there is any difference in the two instruments, the provisions of the bond must govern. The administrator's deed should, therefore, have been made to "Missouri E. Franklin and the legal heirs of Robert G. Franklin," and for the purpose of this suit should be made to so read. Agan v. Shannon, 103 Mo. 669; Loring v. Groomer, 110 Mo. 642; Mitchner v. Holmes, 117 Mo. 208; Brownwell v. Arnold, 60 Mo. 80; Waples v. Jones, 62 Mo. 443; Noell v. Gaines, 68 Mo. 653. (2)    Robert G. Franklin was the creator of this estate, and he is the man who had inserted in the

bond for deed the words, "Missouri E. Franklin and the legal heirs of Robert G. Franklin." He did this while living and in the full possession of his senses, and it will not do to say that he had no purpose when he had inserted in the bond for deed the words "and the legal heirs of Robert G. Franklin," and that after his death the lawyer or clerk did no violence to his intentions when he omitted those words from the granting clause of the administrator's deed. The main purpose in the construction of deeds, as of other contracts, is to effectuate the intention of the parties, and little aid can be derived from precedents or technical rules. 2 Devlin on Deeds, sec. 836; Fanning v. Doan, 128 Mo. 328; Hunter v. Patterson, 142 Mo. 310; Walton v. Drumtra, 152 Mo. 498. (3) If this deed be construed to create an estate in "fee tail," in Missouri E. Franklin, with remainder over to the "legal heirs of Robert G. Franklin," then the statute (sec. 4592, R. S. 1899), converts the same into a life estate in the first taker, and creates an absolute estate in the heirs of Robert G. Franklin. Wood v. Kice, 103 Mo. 329; Farrar v. Christy, 24 Mo. 468; Harrison v. Swan, 58 Mo. 147; Thompson v. Craig, 64 Mo. 312; Hunter v. Patterson, 142 Mo. 310; Bone v. Tyrell, 113 Mo. 175; Reed v. Lane, 122 Mo. 311; Goodman v. Simmons, 113 Mo. 127; Emmerson v. Hughes, 110 Mo. 627; Cross v. Hoch, 149 Mo. 344; Welliver v. Jones, 166 Ill. 80; Moore v. Gary, 149 Ind. 51. (4) If the words, "and the legal heirs of Robert G. Franklin," are to be construed as words of purchase, the estate created would be a joint one in Missouri E. Franklin and the heirs of Robert G. Franklin, and under the statute Mrs. Franklin and all the heirs of Robert G. Franklin would take a fee simple estate in the lands as tenants in common. 6 Ballard's Real Prop., sec. 289; Tindall v. Tindall, 167 Mo. 225; Sutton v. Cassergille, 77 Mo. 397; Keith v. Keith, 80 Mo. 125. (5) In any event limitations cannot be invoked against J. F. Franklin, Daisy Atwood, and Bob-

bie Franklin (now Whittingill), for the reason that they were within the age accorded to minority by the law for bringing suits at the time the suit was filed. (6) Limitations can not run against Emily Orton for the reason that she was a married woman at the time of the transaction, and so remains to this day. Lindell Real Estate Co. v. Lindell, 142 Mo. 75; Throckmorton v. Pence, 121 Mo. 50. (7) Roberta Scott was married during minority, at approximately the age of fifteen years, and was a married woman at the time the suit was brought. I know that the case of Farish v. Cook, 78 Mo. 212, subsequently followed in the case of Quick v. Rufe, 164 Mo. 408, announces the doctrine that the disability of coverture cannot be added to the disability of minority, and hence I take it as being the law of this State, but in my opinion, and in the opinion of many judges and lawyers, this is a very unjust rule, and ought not to be the law. (8) There can be no question of the fact that Mrs. Shrum is a competent witness as to every transaction in the record, except as to her trade with Franklin Cunningham, and we contend that she is a competent witness even as to that matter for the reason that she is not a party to the record, is not a party in interest, and none of the plaintiffs hold under her. A party to a contract, when the other party is dead, is incompetent under the statute only to testify in his own favor. Ford v. O'Donnell, 40 Mo. App. 63; Angell v. Hester, 64 Mo. 142. The test of competency is the contract or cause of action in issue and on trial, not the fact to which the party is called to testify. Ring v. Jameson, 66 Mo. 225; Mier v. Thieman, 90 Mo. 433; Bank v. Hunt, 25 Mo. App. 170.

*Faris & Oliver* for respondents.

(1) (a) The abstract of title which showed that the bond for title in question was made by "Wm. M. Darnall to Missouri E. Franklin," no mention being

made in said abstract of "the legal heirs of Robert G. Franklin," was a duly certified and proven copy of "Carlton's Abstract," and is decisive of this case. Said abstract, since the destruction by fire of all court records, and public records of land titles of Pemiscot county, has been the sole and only record of titles to land, in said county, prior to December 2, 1882, and it has been made prima facie evidence of such titles and records by legislative acts. Laws 1885, p. 162; Laws 1901, p. 251. (b) The Legislature has the right thus to change the common-law rules of evidence and to establish new rules in derogation thereof. Smith v. United States, 5 Peters 592. (c) This legislative privilege has been repeatedly exercised in our own State, as, by a comparison of the common-law rules of evidence with our Missouri chapter on "Witnesses" will readily appear. Sec. 4652, R. S. 1899; 1 Greenleaf on Evidence (15 Ed.), 327; sec. 4680, R. S. 1899; 1 Greenleaf on Evidence, 372; sec. 4656, R. S. 1899; 1 Greenleaf on Evidence, 334. (d) Upon the loss of said title-bond, the record thereof became the best evidence of its contents, and such record could not have been contradicted orally, or varied by parol evidence. Sec. 3115, R. S. 1899. (2) Nothing can be read into a deed from another deed, except the description of the land sought to be conveyed. Agan v. Shannon, 103 Mo. 669; Tied. Real Prop., sec. 481. (3) All of the defendants, except J. F. Franklin, Daisy Atwood, and Bobbie Whittingill are barred by this statute, regardless of any other question. (a) Respondents themselves took adverse possession of the lands in question about the sixth of November, 1883, and have ever since continuously retained such possession. When this action was begun J. A. Franklin and W. B. Franklin were twenty-seven years and forty-one years old, respectively, and being males could not avail themselves of coverture. (b) Roberta Scott was barred. Farish v. Cook, 78 Mo. 212; Quick v. Rufe, 164 Mo. 408; Gray v. Yates, 67 Mo. 601;

Cunningham v. Snow, 82 Mo. 587; Jones v. Thomas, 124 Mo. 586. (c) Emily Orton was almost twenty-four years old when she married. She had not, nor had anyone representing her, or under whom she claims, lived on the lands in controversy here for almost a year before she became covert. Respondents claim title under Missouri E. Franklin, and insist that, upon the facts, Emily Orton is barred.

BRACE, P. J.—This is a suit in equity to reform an administrator's deed, and to declare the interest of the parties in the real estate thereby conveyed.

The plaintiffs are the children and only heirs at law of Robert G. Franklin, deceased, and the defendants are the children and only heirs at law of Franklin Cunningham, deceased. The judgment below was for the defendants and the plaintiffs appealed.

The undisputed facts are that some time prior to the year 1874 one Joseph Darnall died, seized and possessed of the following described real estate situate in Pemiscot county, to-wit: ''The southeast quarter of the southwest quarter of section twenty-five, and the southwest quarter of the southwest quarter of section twenty-five, containing eighty acres; also the undivided four-sevenths part of the southeast quarter, and the northeast quarter of the southwest quarter of section twenty-five, the northeast quarter of the northwest quarter—misdescribed as the southeast quarter of the southwest quarter—the south half of the northeast quarter, and the northwest quarter of the northwest quarter of section number thirty-six, which undivided four-sevenths amounts to two hundred and five and five-sevenths acres, all in township number eighteen north, of range eleven east.''

That thereafter letters of administration on the estate of the said Joseph Darnall were granted by the probate court of said county to one William Marsh by whom said real estate, in pursuance of an order of said

court duly made, was on the fourteenth day of September, 1874, sold, for the payment of the debts of the said Joseph Darnall, deceased, at public sale to one William M. Darnall, who was the highest and best bidder therefor at and for the price and sum of five hundred dollars, which sale was on the sixth day of October, 1874, duly approved by said court, the terms of the sale being one-third cash, and the remainder in six and twelve months in equal payments, and deed to be made on complete payment of the purchase-money.

Afterwards, on the nineteenth day of October, 1874, the said William M. Darnall bargained and sold said real estate to the said Robert G. Franklin for the sum of eleven hundred dollars, and executed a title-bond for a deed therefor.

Afterwards, on the second of August, 1881, the said Robert G. Franklin died intestate, leaving surviving him, his widow, Missouri E. Franklin, and eight children, one of whom has since died without issue, and the others are the plaintiffs in this suit.

In the meantime, the said Marsh having died, and John N. Delashmutt having been duly appointed administrator *de bonis non* of the estate of the said Joseph Darnall, deceased, he, as such administrator, on the fourth day of October, 1881, duly executed and acknowledged a deed in pursuance of said sale which, after the usual recitals in such deeds, proceeded as follows:

"And whereas, on the nineteenth day of October, 1874, the said William M. Darnall, for and in consideration of the sum of one thousand and one hundred dollars, and interest thereon, agreed to be paid by Robert G. Franklin, bargained and sold said real estate hereinbefore described, to **Missouri E. Franklin and the legal heirs of Robert G. Franklin,** for which the said William M. Darnall on the said nineteenth day of October, 1874, executed and delivered to the said Missouri E. Franklin his title bond, and the said Robert G. Franklin executed at the same time his

several promissory notes to the said William Marsh, administrator as aforesaid, for the balance of the purchase money due by the said William M. Darnall for said real estate.

"Now therefore, in consideration of the sum of five hundred dollars paid to said William Marsh, and to me the administrator *de bonis non,* by the said William M. Darnall and said Missouri E. Franklin, the receipt of which is hereby acknowledged, and by virtue of the authority in me vested by law, I, John N. Delashmutt, administrator *de bonis non,* as aforesaid, do hereby grant, bargain and sell and convey to the said Missouri E. Franklin, assignee of the said William M. Darnall, all the right, title and interest which the said Joseph Darnall had of, in and to said real estate at the time of his death:

"To have and to hold the right, title and interest hereby conveyed unto the said Missouri E. Franklin, her heirs and assigns forever, with all the rights and privileges thereto belonging.

"In witness whereof I have hereunto set my hand as administrator *de bonis non* as aforesaid, and affixed my seal this fourth day of October, 1881."

This deed was duly recorded on the tenth day of November, A. D. 1881. Afterwards the said Missouri E. Franklin intermarried with one J. C. Edrington and on the sixth day of November, 1883, they duly executed and acknowledged a deed to the premises as follows:

"This indenture made on the sixth day of November, A. D. 1883, by and between M. E. Edrington and J. C. Edrington of Pemiscot county and State of Missouri, parties of the first part, and Franklin Cunningham, of the county of Pemiscot, in the State of Missouri, parties of the second part:

"Witnesseth, that the said parties of the first part, in consideration of the sum of five hundred and fifty dollars, to be paid by the said party of the second part, the receipt of which is hereby acknowledged, do by

these presents grant, bargain and sell, convey and confirm, unto the said party of the second part, his heirs and assigns, the following described lots, tracts or parcels of land, lying, being and situate in the county of Pemiscot and State of Missouri, to-wit, **all the right, title and interest that the said M. E. Edrington and J. C. Edrington in and to"** [here follows a description of the real estate, and this is followed by the usual covenants of warranty].

This deed was duly recorded on the twelfth day of November, 1883, when the said Franklin Cunningham went into the actual possession of the premises and so remained in possession thereof until the year 1892, when he died, leaving six children, who, since his death, have continued and now are in possession of the same and who are the defendants in this suit.

The suit was instituted in June, 1899, was tried at the February term, 1902, of the Pemiscot county circuit court, on an amended petition, filed on the thirtieth of November, 1899, and upon the answer and reply thereto thereafter filed.

The cause of action set out in the plaintiffs' petition is, in substance, that the said Robert G. Franklin purchased said real estate from the said William M. Darnall, for his wife and children; that upon the purchase, the said Darnall executed and delivered a title bond for a deed by which he covenanted that he would make or cause to be made by the administrator of the said Joseph Darnall, upon the payment of the complete purchase price of said real estate, a deed in due form of law, conveying to Missouri E. Franklin, and the legal heirs of Robert G. Franklin, all the right, title and interest of William M. Darnall and Joseph Darnall, deceased, in and to the above-described land. That the purchase price for said land having been fully paid by the said Robert G. Franklin, the foregoing deed was executed by the said John N. Delashmutt, administrator *de bonis non* of the said Joseph Darnall, deceased, in

performance of said contract, but that by mutual mistake and oversight of the parties said deed was made to convey said real estate to the said Missouri E. Franklin as sole grantee instead of to Missouri E. Franklin and the legal heirs of Robert G. Franklin, as it should have done, according to the true tenor and intent of said bond for said deed.

The answer of defendants was a general and special denial of the allegations of the petition, a plea of the Statute of Limitations, and that their ancestor paid full value for the premises.

The crucial question of fact in the case is: Did the title bond by its terms require the administrator's deed to be made to Missouri E. Franklin, or to Missouri E. Franklin and the legal heirs of Robert G. Franklin? While on the trial a great deal of evidence was introduced, much of it incompetent and irrelevant. The legitimate evidence bearing upon this question is contained within a very narrow compass. That evidence tended to prove that the title bond was recorded, that it was filed in the probate court, and was destroyed by the fire which destroyed the courthouse in the town of Gayoso on the second day of December, 1882, together with all the records therein contained. As secondary evidence of the contents of the title bond the defendants introduced a certified copy of "Carlton's Abstracts" of the title to the premises, which showed that the title bond aforesaid was "from William M. Darnall to Missouri E. Franklin." By an act of the General Assembly, "approved March 28, 1902," it was provided that "a copy of any entry or entries from the abstracts known as 'Carlton's Abstracts' relating to or affecting the titles to real estate in Pemiscot county, verified by the affidavit of the person or persons in whose lawful custody said abstracts may be that the same is a true and correct copy of the entry, shall be received as prima facie evidence of the matter and en-

tries therein contained in all courts and places within this State.'' And as secondary evidence of the contents of said bond the plaintiff introduced *Mrs. Missouri E. Shrum nee* Edrington *nee* Franklin who testified as follows:

"A. I had the bond for deed and am familiar with its contents. I gave it to my husband the spring before he died, and he took it to George Carlton, and he had suit brought for the deed. The contents of the bond were that the deed was to be made, when the purchase price was paid, to Missouri E. Franklin and Robert G. Franklin's heirs.

"Q. Who paid for this land? A. Robert G. Franklin paid all of the purchase-money before he died, except $150, and that was paid by me from property taken off the place after his death and delivered to George W. Carlton.

"Q. What was this property you delivered to George W. Carlton? A. It was cotton raised on the farm the year my husband died.

"Q. Did you ever pay out of your own separate estate any part of the purchase price of this land? A. No, sir, I didn't. I only had about $84 at the time of my marriage, and that I spent for anything I wanted.''

And *Mrs. Emily Orton,* who after testifying that she was familiar with the contents of the bond and had read it several times, testified as follows:

"Q. State what the contents of the bond were? A. The bond was to M. E. Franklin and R. G. Franklin's legal heirs—that is who the bond was to.

"Q. The bond bound Wm. Darnall to convey this land to M. E. and R. G. Franklin's legal heirs? A. Yes, sir.

"Q. You are positive of that? A. Yes, sir, as positive as I am sitting here.

"Q. Missouri Franklin was not your mother? A. No, sir, she was my father's fourth wife.''

When the positive, direct and unequivocal testi-

mony of these witnesses is considered in connection with the recital in the administrator's deed, equivalent to a recital that the purchase was made for "Missouri E. Franklin and the legal heirs of Robert G. Franklin," and which could not well have found its way therein unless it came from the title bond, upon which it is fair to presume the deed was drawn, we are of the opinion that such *prima facie* case as was made by the certified copy from "Carlton's Abstracts" was overcome, and when all the evidence is considered in connection with the deed from Mrs. Edrington and her husband in which she conveyed only her interest in the premises to Franklin Cunningham, and by which he acquired no other or greater title than she had subject to its equities (Farrar v. Patton, 20 Mo. 81; Gibson v. Chouteau's Heirs, 39 Mo. 537; Mann v. Best, 62 Mo. 491; Moore v. Harris, 91 Mo. 616; Flynn v. Herye, 4 Mo. App. l. c. 366), we are of the opinion that the administrator's deed ought to be so reformed as to make the granting clause in said deed read "to the said Missouri E. Franklin and the legal heirs of Robert G. Franklin, deceased," instead of "to the said Missouri E. Franklin" as the same now reads.

The living children of the said Robert G. Franklin, deceased—and who were his legal heirs when the deed was executed—were Emily Orton, William B. Franklin, Edward Franklin, John A. Franklin, Roberta E. Scott, James F. Franklin, Daisy J. Atwood and Bobbie Whittingill, and the effect of said deed when thus reformed is to vest in the said Missouri E. Franklin and each of said children, as of the date of said deed, an equal undivided one-ninth interest in the premises as tenants in common. [Fanning v. Doan, 128 Mo. 323.] And this brings us to the second branch of this case.

The defendants and their father had been in the actual, open, peaceable, exclusive and continuous, adverse possession of the premises from November 12, 1883, until this suit was commenced in June, 1899, a

period of 15 years and seven months. It appears from the evidence that, on the twelfth of November, 1883, when the Statute of Limitations began to run, the plaintiff Emily Orton was covert and has continuously remained covert ever since, so her right of action was not barred when this suit was instituted. It further appears from the evidence that the right of action of all the other children except James F. Franklin, Daisy Atwood and Bobbie Whittingill was barred by the statute when this suit was commenced. The fact that Roberta E. Scott, after the statute began to run, became covert, during her minority, did not have the effect of taking her out of that category, as disabilities can not be tacked in this State. [Farish v. Cook, 78 Mo. 212; Quick v. Rufe, 164 Mo. 408, and cases cited; Gordon v. Lewis, 88 Mo. 378; Cunningham v. Snow, 82 Mo. 587.]

Adverse possession not only bars action but confers title. [Kirton v. Bull, 168 Mo. 622; Scannell v. American Soda Fountain Co., 161 Mo. 606.] Hence, when this suit was commenced the defendants, by the deed from Missouri E. Franklin and by adverse possession, had acquired title to the undivided five-ninths of the premises, and the title to the remaining undivided four-ninths thereof was vested in the said Emily Orton, James F. Franklin, Daisy J. Atwood and Bobbie Whittingill and the remaining plaintiffs had no title to the premises.

Therefore, the judgment of the circuit court will be reversed and the cause remanded with directions to that court to enter a decree reforming said administrator's deed, and declaring and vesting the title to the premises, between the parties, in accordance with the views expressed in this opinion.

All concur.