DUNKERSON et al. v. GOLDBERG.

(Circuit·Court of Appeals, Eighth Circuit. May 4, 1908.)

No. 2,704.

1. TRUSTS—DEED—CONSTRUCTION—ESTATE CONVEYED.

A deed conveyed certain land to F. in trust to and for the sole and separate use of a wife for life, remainder to the husband and his heirs, forever. *Held*, that the deed created an equitable estate in·the wife and an equitable remainder in the husband after the termination of the wife's life estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 183–187.]

**2. EXECUTION—PROPERTY SUBJECT—EQUITABLE VESTED REMAINDER.**

Under Rev. St. Mo. 1845, c. 61, § 14 (Rev. St. Mo. 1855, c. 63, § 17), an equitable vested remainder after the termination of a life estate created by a trust deed was subject to sale on execution against the remainderman.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 21, Execution, § 91.]

**3. EJECTMENT—LEGAL TITLE.**

Plaintiffs cannot recover in ejectment without proving a legal title.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Ejectment, §§ 16–29.]

**4. TRUSTS—CONVEYANCE BY TRUSTEE—EFFECT.**

Certain land was conveyed by a warranty deed to F. in trust for the use of a wife for life, remainder to the husband and his heirs. The equitable remainder in the husband having been sold on execution against him, F. by quitclaim deed conveyed the property to M. in trust to and for the separate use, control, and benefit of the wife and her heirs, free from any control, debt, liability, or judgment against her husband, with power on the wife's written request to sell, mortgage, or lease, etc. *Held*, that the deed to M. vested in the grantee only such title as F. had, and left the land subject in the hands of M. to all the equities attaching to it in the hands of F., including the rights of the purchaser at the execution sale.

**5. SAME—CONSTRUCTIVE TRUSTS.**

Such quitclaim deed purported to deal only with the interest of the wife, leaving the equitable remainder in favor of the husband and his grantees as originally created, and hence no constructive trust which could not be executed by the statute of uses was thereby created in favor of the latter.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

George B. Webster (Joseph P. Wagner and George A. Cunningham, on the brief), for plaintiffs in error.

Henry W. Allen (John D. Johnson, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was a suit in ejectment to recover possession of a lot of ground in the city of St. Louis, Mo. A jury was waived, and the cause tried to the court on facts practically undisputed. Judgment was rendered in favor of the defendant, from which the plaintiff prosecutes error.

In 1852 James Reilley, being then the owner of the lot in controversy, sold and conveyed it by warranty deed to one Du Bouffay Fremon "in trust to and for the sole and separate use of Harriette Hunt, wife of Daniel B. Hunt, during her natural life, and after her death to and for the use and benefit of said Daniel B. Hunt and his heirs, forever." The deed contained the following clause:

"And the said second party [the trustee], his heirs and assigns, shall at the written request of said Daniel B. and Harriette Hunt sell and convey the real estate hereinbefore described, or any part thereof, by good and proper deed of conveyance in fee simple, or shall mortgage the same, or give a deed of trust thereon, t · such person or persons and for such sum or sums of money as the said Daniel B. and Harriette Hunt shall desire."

In 1855 the right, title, and interest of Mr. Hunt was sold on execution to satisfy a judgment theretofore duly rendered in a court of record against him, and the same was conveyed by a sheriff's deed, duly executed, acknowledged, and recorded in the proper registration office, to Thomas Culley, under whom plaintiffs below (plaintiffs in error here) claim title. In 1857 Fremon, the trustee, acting upon the written request of Daniel B. and Harriette Hunt, executed and delivered to James Mugan a deed of which the following is a copy:

"This deed, made on the 18th day of July, 1857, by and between Du Bouffay Fremon (trustee of Harriette Hunt, who is the wife of Daniel B. Hunt), of the city of San Antonio, state of Texas, party of the first part, and James Mugan, of the city and county of St. Louis, state of Missouri, party of the second part, witnesseth: That the said party of the first part in consideration of the sum of one dollar to him paid by the said party of the second part, receipt of which is hereby acknowledged, does by these presents remise, release, and forever quitclaim unto the said party of the second part, in trust to and for the sole and separate use, control, and benefit of Harriette Hunt, wife of Daniel B. Hunt, both of the city and county of St. Louis, state of Missouri, and her heirs, free from any control, debt, liability, or judgment against her said husband, with power upon the written request of the said Harriette to lease, mortgage or sell the following town lot or parcel of ground. * * * To have and to hold the same, with all the rights, immunities, privileges, and appurtenances thereunto belonging, unto the said party of the second part, and his heirs and assigns, forever, in trust to and for the sole use and benefit of Harriette Hunt, wife of Daniel B. Hunt, and her heirs, free from any control, debt, liability, or judgment against her said husband, with power upon the written request of the said Harriette to lease, mortgage, or sell the same."

Daniel B. Hunt died some time before 1887. In that year Mrs. Hunt conveyed the lot to Jacob Hecht, from whom the defendant now in possession deraigns title, and she died in 1898.

The Reilley deed of 1852 created an equitable life estate in Mrs. Hunt and an equitable vested remainder after the termination of the life estate in Mr. Hunt. This remainder was subject to sale under the execution issued on the judgment against Hunt in 1855 (Rev. St. Mo. 1845, c. 61, § 14; Rev. St. Mo. 1855, c. 63, § 17), and was sold to Culley, through whom plaintiffs claim. This sale, and the sheriff's deed made pursuant thereto, and subsequent deeds shown in evidence, transferred all of Hunt's equitable estate, which was the remainder in fee after the termination of the particular estate of Mrs. Hunt, to plaintiffs. Morgan v. Bouse, 53 Mo. 219; White v. McPheeters, 75 Mo. 286; Hammond v. Johnston, 93 Mo. 198, 6 S. W. 83; Block v. Morrison, 112 Mo. 343, 20 S. W. 340. Defendant asserts no title to the land in question, and concededly has none which would stand against an equitable action by plaintiffs. His only contention is that plaintiffs show no legal title, and that in the absence of such title they cannot recover in ejectment. The legal conclusion just stated cannot be controverted. If plaintiffs have no legal title, they cannot recover in this action. Have they not a legal title?

It is contended by the defendant that the deed of 1857 from Fremon, the original trustee, to Mugan, conveyed the legal title to the latter in trust for the sole use of Mrs. Hunt, and thereby destroyed the legal title theretofore held by Fremon in trust for Mr. Hunt, or at best constituted Mugan a constructive trustee for Mr. Hunt's interest. We think this is incorrect. The conveyance from Fremon to Mu-

gan was only by a quitclaim deed. It vested in the grantee only such title as the grantor had, and left the lot conveyed subject, in the hands of the grantee, to all the equities attaching to it in the hands of the grantor. Mann v. Best, 62 Mo. 491; Stoffel v. Schroeder, 62 Mo. 147; Schradski v. Albright, 93 Mo. 42, 5 S. W. 807. No trust is ever permitted to fail for want of a trustee. Accordingly, if the deed from Fremon to Mugan was intended to convey the whole title to the lot, it conveyed the same subject to the trust under which Fremon held it. At that time he held it in trust for Culley, the purchaser and owner of record of the vested remainder originally belonging to Mr. Hunt. Whatever might have been the effect of a deed like that, if made to Mugan while the interests of Mr. and Mrs. Hunt remained as originally granted, a conveyance even with their consent could not operate to destroy the trust created by operation of law in favor of the purchaser of Mr. Hunt's interest at the execution sale. The law permitting that interest to be sold on execution will not allow it to be destroyed by the same act. It thus appears that Mugan, by the deed of 1857, took the legal title to the lot in question, subject to the trust originally created in his grantor.

But it is said that the deed to Mugan was itself a breach of trust, inasmuch as it purported to create a trust in Harriette Hunt and her heirs to the lot in fee simple absolute, and that it created at best only a constructive trust in favor of Hunt's grantees, and that the statute of uses does not execute a constructive trust of that kind. It may be conceded that the statute of uses does not execute a constructive trust. This principle alone is what defendant relies upon to defeat recovery in this action and compel plaintiffs to resort to an equitable action to secure possession of their land. The mandate of the law is as effectual to create or continue a trust as the agreement of the parties, and even if Fremon's deed to Mugan was intended to cut out Mr. Hunt's grantees, and vest the trust property exclusively in Mrs. Hunt and her heirs, it was, in view of the law governing the effect of a quitclaim deed, ineffectual to accomplish that intent.

A critical examination of the Mugan deed, however, fails to convince us that any attempt was thereby made to cut out the estate by remainder, or that the deed, when properly construed, has that effect. Before it was made Mr. Hunt's interest had passed by operation of law to Culley, and Fremon held the legal title in trust for Culley so far as that interest was concerned. The interest so disposed of was beyond the control of either or both Mr. or Mrs. Hunt. Their request for a conveyance of that interest could not, within the true meaning of the original deed, operate to require its conveyance by the trust in contravention of Culley's rights. It cannot, therefore, be presumed that Mr. and Mrs. Hunt and Fremon would intend to do the futile thing of attempting to destroy those rights. On the contrary, we think their deed is fairly susceptible of a construction which recognizes and respects them. Notwithstanding the fact that Fremon was trustee of Mr. as well as Mrs. Hunt, he limits his capacity of action in the deed to Mugan to Mrs. Hunt's interest exclusively. He says:

"This deed, made on the 18th day of July, 1857, by and between Du Bouffay Fremon, trustee of Harriette Hunt, who is the wife of Daniel B. Hunt," wit-

nesseth that he "does by these presents remise, release, and forever quitclaim unto * * * James Mugan * * * the lot in controversy, * * * in trust for the sole and separate use, control and benefit of Harriette Hunt, wife of Daniel B. Hunt * * * and her heirs, free from any control, debt, liability, or judgment against her said husband."

The subject of the deed was Mrs. Hunt's interest only. Fremon undertook to act as trustee for her only, and the obvious purport of the deed, in view of the fact, then constructively, if not actually, known by all, that Mr. Hunt's interest had been disposed of by sale under execution, was to save Mrs. Hunt's life estate, which was all she had, from liability for the debts of her husband and to free it from his control. At that time no married woman's statutory separate estate existed in Missouri, and the rights of the husband in his wife's real estate, unless curtailed by agreement, were fixed by common-law principles. It results from the foregoing that in any contingency the trust in favor of Mr. Hunt and his grantees remained as originally created. If the parties intended by the quitclaim deed of 1857 to cut out the interest of Mr. Hunt's grantees, the deed was ineffectual to accomplish that intent. It passed the title to Mugan, charged with the same trust as before, and no constructive trust was thereby created. If the quitclaim deed of 1857 was intended to transfer only the life estate of Mrs. Hunt, the legal title remained, held in trust by Fremon for the use of Mr. Hunt or his grantees after the termination of the life estate. Whichever of these views may be taken, at the expiration of Mrs. Hunt's life estate, occasioned by her death in 1898, either Mugan or Fremon held the legal title to the lot in question in trust for the grantees of Mr. Hunt, and the statute of uses executed the dry trust in such grantees, and thereby vested in them the legal title in fee simple. Rev. St. Mo. 1889, § 8833; Rev. St. Mo. 1899, § 4589 (Ann. St. Mo. 1906, p. 2493).

There is some controversy as to whether all of the plaintiffs in any event are entitled to recover in this action; but it is conceded that some of them may recover certain undivided interests in the event a legal, as distinguished from an equitable, title is found to exist. This will be properly worked out at the next trial. The court erred in rendering a judgment for the defendant.

It must be reversed, and the cause remanded for a new trial. It is so ordered.